## THE STATE v. THEODORE CHRISTIAN, Appellant.

**Division Two, December 9, 1913.**

1. **INFORMATION: Misjoi'nder of Offenses.** Except where otherwise provided by statute, only such offenses may be joined in the same information as arise out of the same transaction and which are so far cognate that an acquittal or conviction for one would be a bar to a trial for the other.

2. ———: ———: **Accomplice in Larceny: Harboring Thief.** It is a misjoinder of causes of action to charge in the first count of the information that defendant and another stole a horse, and in the second count to charge that defendant did "receive, harbor, aid and assist" said other "to make his escape and avoid arrest, trial, conviction and punishment."

3. ———: **Misjoinder of Defendants: Two Offenses.** Likewise it is a misjoinder of defendants to charge in one count of an information that a felony has been committed by two defendants and in another to charge · that one of them alone committed another and different crime; for instance, to charge in one count that appellant and Scott stole a horse, and in the other to charge that appellant harbored and aided Scott to escape arrest—especially where the State's evidence shows that Scott was guilty of no crime in permitting himself to be harbored and to escape arrest, and was the mere passive agent through whom appellant committed the crime of stealing the· horse.

4. **PRESUMPTION: Possession of Recently Stolen Property: Instruction.** Where the manner of getting the actual possession of property recently stolen is admitted and fully explained by the evidence and the only question in issue is whether defendant holds such possession innocently or feloniously, no presumption can arise against him from the mere admitted or known fact of possession; but where he was acquitted of the offense of stealing the property, an objection that it was error to instruct the jury upon the presumption arising from the possession of recently stolen property is wholly academic.

5. **REASONABLE DOUBT: Instruction.** The instruction on reasonable doubt, presumption of innocence and burden of proof should require the reasonable doubt that will justify acquittal "to arise from a consideration of all the evidence in the case."

6. **ACCESSORY TO ESCAPE OF THIEF: Insufficient Evidence.** Before a defendant can be convicted of aiding a thief to escape arrest and punishment it must be proved that the thief was in fact trying to escape.

7. **CONVICTION: On General Principles.** The conviction of a defendant cannot be made to rest upon his bad reputation and the fact of a misspent life, or on what is commonly announced as "general principles;" it must rest upon the evidence in the case.

Appeal from Moniteau Circuit Court.—*Hon. J. G. Slate*, Judge.

REVERSED AND REMANDED.

*John M. Williams* and *L. F. Wood* for appellant.

(1) There is a misjoinder of the two counts in the information, and the motion to quash should have been sustained, as also the motion in arrest. The first count charges Scott and this defendant with grand larceny, while the second count charges Scott with the larceny and this defendant as an accessory after the fact. These crimes are created by different sections of the statute, require different proof and separate and distinct verdicts. R. S. 1909, secs. 4899, 4536; Kelly's Criminal Law (3 Ed.), sec. 53; State v. Durbin, 25 Mo. 175; State v. Daubert, 42 Mo. 245. (2) The motion to quash the information should have been sustained for another reason: In the first count, both defendants, Scott and Christian, are charged with grand larceny— stealing Coleman's mare; while in the second count the defendant Christian is charged with being an *accessory after the fact* under Sec. 4899, R. S. 1909. In other words, Christian is charged in the first count with being an accomplice with Scott in committing the larceny. One charged with a crime as principal cannot be charged in the same indictment as an accessory. Wharton's Crim. Ev. (8 Ed.), sec. 440; State v. Umble, 115 Mo. 461; R. S. 1909, sec. 4899; State v. Kuhlman, 152 Mo. 103. (3) The giving of instruction number 4

for the State, in regard to the recent possession of stolen property was most hurtful to this defendant and not warranted by the evidence. The entire evidence regarding the possession of the stolen mare by defendant was that he had ridden her about town, publicly, offering her for sale. He did not tell anyone that she belonged to him or that he had an interest in her. Messerlie, who bought the mare, stated that he knew that defendant made no claim to the mare and was selling her for Scott. (4) The court erred in refusing to give the instruction asked by defendant on circumstantial evidence. If the jury refused to believe the witness Scott, as the verdict shows they did, then such instruction was proper. State v. Moxley, 102 Mo. 391; State v. David, 131 Mo. 380; State v. Clark, 147 Mo. 38; State v. Woolard, 111 Mo. 256. If the instruction was faulty it was the duty of the court to give a correct one. State v. Clark, 147 Mo. 38. The defendant was acquitted of the larceny and should have been acquitted on the second count, as there was no evidence that is not as consistent with the innocence of the defendant as with his guilt. The acquittal of defendant of the larceny showed that the jury disbelieved the entire testimony of Scott, and the evidence of Scott being eliminated, there is no evidence that defendant had any more knowledge of Scott, or that the mare was stolen, than these other persons. In a criminal case it is not sufficient to say, as in a civil case, that the circumstances were sufficient to put a man on inquiry, but actual knowledge must be proven beyond a reasonable doubt. It is not sufficient that the evidence raises a strong suspicion of his guilt. State v. Crabtree, 107 Mo. 642; State v. Clien, 154 Mo. App. 686. (5) In order to convict the defendant Christian of being an accessory after the fact, four things must be proven against him: first, that Scott was guilty of the larceny; second, that Christian knew that Scott was guilty; third, that Scott was attempting to escape in order to avoid arrest; and,

fourth, that Christian knew that Scott was attemping to escape and did some act to assist him, such as hiding him, furnishing him means of escape, or other tangible assistance. There is absolutely no evidence to sustain any of these grounds, except the first.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, for the State.

(1) Is it a misjoinder of counts to include in the same information a count for larceny and a count for being an accessory after the fact? State v. Butler, 17 Vt. 150; State v. Neddo, 92 Me. 71; State v. Edwards, 60 Mo. 490; State v. Lehman, 182 Mo. 447; State v. Boyd, 108 Mo. App. 525; Secs. 4899, 4900, 5103, 5105, 5114, R. S. 1909, 3 Bishop's New Crim. Proc. (2 Ed.), secs. 421 and 424; Rex v. Blackson, 8 Car. & P. 43. (2) When the offenses are separate, the one defendant not being guilty of the same thing as the other, may they be joined in one indictment? 2 Bishop's New Crim. Prac. (2 Ed.), secs. 470 and 473; State v. Edwards, 60 Mo. 490; State v. Lehman, 182 Mo. 447. Duplicity in an indictment is the joinder of two or more distinct offenses in one count. State v. Fox, 148 Mo. 525; 1 Bishop's New Crim. Prac., sec. 432; State v. Healy, 50 Mo. App. 243; State v. Bridges, 24 Mo. 353.

FARIS, J.—This is a prosecution commenced against the defendant in the circuit court of Moniteau county upon an information which was filed therein on April 26, 1913. Since this information has been attacked by the defendant, both by a motion to quash directed toward the entire informaion, and by a demurrer to the second count thereof, we deem it necessary for a full understanding of the points involved, to set the information out in full. Omitting formal parts, it is as follows:

"J. B. Gallagher, prosecuting attorney within and for Moniteau county, Missouri, upon his information and belief, for an amended information, informs the court that Eddie Scott and Theo. Christian on or about the 4th day of February, 1913, at Moniteau county, Missouri, did then and there unlawfully and feloniously steal, take and carry away one bay mare, then and there being, the personal property of Cornelius Coleman, of the value of one hundred dollars, against the peace and dignity of the State.

"J. B. Gallagher, prosecuting attorney aforesaid, upon his information and belief aforesaid, further informs the court that Eddie Scott, on or about the 4th day of February, 1913, at Moniteau county, Missouri, did then and there unlawfully and feloniously steal, take and carry away one bay mare, then and there being, the personal property of Cornelius Coleman, of the value of one hundred dollars; and the prosecuting attorney, aforesaid, upon his information and belief aforesaid, informs the court that Theo. Christian, well knowing the said Eddie Scott to have done and committed the felony and larceny of the bay mare in the manner and form aforesaid, afterwards, to-wit, on or about the 5th day of February, 1913, at Moniteau county, Missouri, him the said Eddie Scott did unlawfully and feloniously receive, harbor, aid and assist with the felonious intent and in order that he, the said Eddie Scott, might then and there make his escape and avoid arrest, trial, conviction and punishment; he, the said Theo. Christian, then and there not standing in the relation of husband or wife, parent or grandparent, child or grandchild, brother or sister by consanguinity or affinity to the said Eddie Scott, against the peace and dignity of the State."

The motion to quash, caption omitted, is as follows:

"Comes now the defendant, Theo. Christian, by his attorneys and moves the court to quash the

amended information filed in this cause, for the fol-
lowing reasons:

"Because there is a misjoinder of parties defend-
ant.

"Because there is a misjoinder of counts in the in-
formation.

"Because the first and second counts in the infor-
mation are inconsistent with each other.

"Because the first count in the information
charges both defendants jointly with grand larceny,
and the second count charges the defendant Theo.
Christian alone of the crime of aiding the escape of
Eddie Scott.

"Because two distinct crimes created by different
and distinct statutes are united in the same informa-
tion.

"Because the information does not charge any
crime."

The above motion to quash being considered by
the court and overruled, exceptions were duly and
properly saved. Thereafter a demurrer to the second
count of the information was filed. This demurrer was
in the usual form and substantially charged that the
second count of the information was not sufficient to
make out or charge against the defendant any offense
against the law of the State. This demurrer was over-
ruled by the court and exceptions thereto also prop-
erly preserved. The case coming on for trial on May
17, 1913, the trial jury by its verdict found defendant
guilty as charged in the second count of the informa-
tion and assessed his punishment at imprisonment for
a term of three years in the penitentiary. No finding
whatever was made by the jury upon the charge con-
tained in the first count, the jury passing it over in
silence.

The court instructed, among other things, that
although both counts were submitted to them for their
finding, they must not convict on both; that they might

convict him on the first count and acquit him on the second, or *vice versa,* or they might acquit him on both counts. The court also gave an instruction upon the recent possession of stolen property, predicated, without doubt, upon the charge contained in the first count of the information. This instruction is in the usual form and the contents thereof are not attacked. The point made is that no such instruction upon the facts should have been given.

Upon the burden of proof, the presumption of innocence and reasonable doubt, the court gave the following instrucion:

"The law presumes the defendant innocent until the State has proven his guilt beyond a reasonable doubt; unless the State has so proven his guilt, you should acquit him, but such a doubt to authorize an acquittal on that ground alone should be a substantial doubt of guilt, and not a mere possibility of his innocence."

The court was asked by defendant to instruct upon circumstantial evidence, but this request was refused.

The facts as to the larceny of the mare, since defendant was not convicted of such larceny, need not be set out here at length; suffice it to say the proof shows that appellant's codefendant, Eddie Scott, stole the mare from one Cornelius Coleman, who resided some twenty miles from the town of California in Moniteau county. This theft by Scott was committed on February 4, 1913. Scott appeared riding the mare into California on February 5, 1913. His story as to the connection of defendant Christian (hereinafter called defendant simply), with the stealing of the mare is that defendant appeared at the farm of said Coleman on February 3, 1913, during the absence of the latter, and hired said Scott for the promise of the sum of fifteen dollars, to ride the mare into California; that on the 4th day of February, defendant returned and assisted Scott to catch and bridle the stolen mare, and that Scott

and defendant thereupon alternately rode said mare until they arrived in the vicinity of the town of California, when, pursuant to instructions from defendant, Scott stopped and stayed all night with one Kennedy, but defendant continued on back to his home in California. According to Scott, all that the latter did in connection with the theft of the mare was done pursuant to defendant's instructions. Upon reaching California on the morning of the 5th of February, Scott rode the mare up to a livery stable belonging to one Orr, and tied her first in the barn and later upon the street, he himself going into the barn to warm.

At this point many other witnesses come into the story. Their testimony is that Scott was introduced to defendant and that he became active in assisting Scott to make a sale of the stolen mare, which was very late in the day consummated, by selling her to one Messerli for the sum of forty-five dollars. This sum was paid to Scott by Messerli by a check, which check was made out in the name of Scott. Defendant, who admits that he was to get ten dollars for helping Scott sell the mare, says that the sole connection with, or knowledge of either Scott or the mare, arose when he was made acquainted with Scott at Orr's livery stable; that he there saw Scott for the first time in life. Scott on the other hand swears that all that he said and did about the theft of the mare and the sale of her, was done under the instructions of defendant; that he (Scott) was and is wholly innocent, and that he was doing what he did in bringing the mare to California and in selling her in order to earn the sum of fifteen dollars promised him by defendant, for that service.

After the cashing of the check at a saloon in California, a number of drinks were taken by both Scott and defendant and it was finally agreed (at whose suggestion it is impossible to say from the record) that Scott and defendant and defendant's brother should come to Jefferson City to "have a good time."

When the check was cashed Scott avers that he gave defendant fifteen dollars of the money, retaining himself thirty dollars; that he purchased the first round of drinks with another five-dollar bill and divided the resulting change with defendant; that it was the suggestion of defendant that the party come to Jefferson City; that the railroad fares of all were paid by defendant and that defendant during the whole of this trip paid all expenses of whatever kind. On the other hand defendant avers that he got only the sum of ten dollars out of the purchase price of the mare; that this was according to agreement with Scott to pay defendant this sum for his services in assisting Scott to make the sale; that in addition he received only the sum of ten cents from Scott, which sum was to be paid to the livery stable man for some small service rendered to Scott, as the latter claimed; that Scott paid all railroad fares and for all refreshments of whatever kind consumed while at California or during the presence of the party at Jefferson City. Where the truth lies it is utterly impossible to say, since there is as much corroboration in favor of defendant's assertions as there is for those of Scott.

The defendant, whose attitude and statements we have woven into the statement already, proves for himself a very good *alibi*, so far as the theft is concerned.

Some very strong circumstances eking out an *alibi* were furnished by some of the witnesses for the State. It was further shown by the State, that when the defendant boarded the train at California to come to Jefferson City he publicly in a loud voice requested a friend to advise his (defendant's) wife that he was going to Jefferson City. The proof shows that defendant, Scott and defendant's brother did come to Jefferson City, where they were arrested on the night of February 5, 1913, and placed in jail. When Scott was searched he had on his person but $5.45 in money, while there

was found upon the defendant the sum of twenty dollars in bills and a small amount of silver.

Prior to the trial of defendant Scott seems to have entered a plea of guilty to grand larceny and was thereafter used by the State as its chief witness against defendant. It may be said in passing, and this fact will be hereafter more at length referred to, that Scott in the testimony which he gave for the State denied that he intended to escape, or that he came to Jefferson City for the purpose of escaping, but that being wholly innocent of any intended wrongdoing, he was, when arrested, on the way back to the neighborhood in which he had stolen the mare. If any other facts shall become necessary to a full understanding of the points involved, they will be found in the opinion.

I.  It is urged upon us as grounds for reversal (a) that the court erred in refusing to quash the information for that, (1) there was a misjoinder of offenses which may not be joined in the same information, and (2) that there was a misjoinder of parties defendant; (b) that the court erred in giving instruction 4 on the recent possession of stolen property; (c) that the court erred in refusing to give the instruction asked by defendant, or any instruction, on circumstantial evidence, and (d) that the evidence adduced by the State was not sufficient to make out a case against the defendant upon the charge of being an accessory after the fact, for which he was convicted. These in their order.

Turning our attention to the first contention urged by defendant, we note that the information is against both Eddie Scott and Theodore Christian; that in the first count thereof both Scott and this defendant are jointly charged *with having to-*

Misjoinder of Offenses. *gether and jointly committed the crime of grand larceny,* in that as it was averred, they stole a horse from one Cornelius Coleman. In the second count of this same information the defendant

alone is charged with an offense, that of being an accessory after the fact, for that defendant, knowing that said Scott had (alone and unaided) stolen the self-same horse averred in the first count to have been stolen jointly by both Scott and defendant acting in concert, did "receive, harbor, aid and assist . . . said Scott to make his escape and avoid arrest, trial, conviction and punishment." Upon this latter count defendant was convicted. The jury made no finding upon the first count, passing it *sub silentio*. Scott, it appears from the record, had, before defendant was put upon his trial, pleaded guilty to the larceny charged against him in the first count.

This court has comparatively often had occasion to discuss one of the bilateral questions arising here, that is, how far may the pleader, in one or more counts of an indictment, join charges of different crimes against the same defendant, but never before has there arisen, so far as we can find, the unique question here involved, of not only charging different offenses in different counts of the same information, but of charging in one count two persons as acting jointly in the commission of a crime, and in the other count charging one of the defendants only with committing a crime with which his coindictee had nothing to do, or at least in which he incurred no criminal liability and took no active part. No finesse of language can relieve the case from the ultimate truth of this bald statement.

Were the two offenses charged such as are permitted to be joined in the same information? We think not. The statute permits a count for larceny to be joined with a count for embezzlement, or with a count for obtaining property by any false pretense, or false token. [Sec. 5103, R. S. 1909.] If an offense by law comprises different degrees the information may contain counts for the several degrees of the same offense, or for one or more of them. [Sec. 5104, R. S. 1909.] In cases of burglary, where in the act of committing

the burglary a larceny is also committed, defendant by statute may be charged with both offenses in the same count or in separate counts of the same information, and if found guilty may be punished by a separate term of imprisonment for each offense. [Sec. 4528, R. S. 1909.] In passing we may say that this is the only exception in our State to the rule that but one punishment can by law be meted out for the commission of a single criminal act. So far the statute prescribes the practice.

We have held, however, that a count for forgery may be joined with a count for uttering the instrument forged (State v. Carragin, 210 Mo. 351); and that a count for larceny may be joined with a count for receiving stolen goods. [State v. Richmond, 186 Mo. 71.] In none of such cases, except that of burglary and larceny above adverted to, will more than one conviction be allowed to stand, and at the close of the case either an election must be made by the State or the jury must be instructed by the court that they can convict on but one count. [State v. Carragin, supra.] It goes without saying that in order to meet the exigencies of the proof, it is well settled that the pleader may charge an offense like murder, or an assault with intent to kill in as many counts as may be reasonably necessary. [State v. Hargraves, 188 Mo. l. c. 348; State v. Jackson, 17 Mo. 544.] So also a count for an assault with intent to kill may be joined with a count for an assault with intent to rape, or to do great bodily harm, or with an assault to commit any felony. This from the very nature of these offenses, and more often from the necessities of the case, and by inference, from the very letter of the statute. [Sec. 4481, R. S. 1909.]

We have not been able to find any other permissible joinders of counts for different offenses in the same information, allowed by the decisions, or by the statutes of this State. Clearly then by the method of exclusion and inclusion we may deduce the rule (stat-

utory exception excepted) that only such offenses may be joined as arise out of the same transaction, and which are so far cognate as that an acquittal, or conviction for one, would be a bar to a trial for the other. Judge WAGNER in the case of State v. Daubert, 42 Mo. 242, expressed his view of the facts which will allow a joinder, thus:

"Where the offense charged in the second count is of the nature of a corollary to the original felony, as in larceny and the receiving of stolen goods, a joinder is good; and whenever there is a legal joinder, the court may exercise its discretion as to an election."

It is evident that the instant case does not fall within the rule. The offenses charged in the two counts of the information here are not cognate, and they do not necessarily arise from the same transaction. One may be an accessory after the fact to murder, arson, burglary, or to any other crime known to the calendar or written in the books. It was not a necessary incident to the theft of the horse here, that defendant became, as it is charged, guilty of being an accessory after the fact. It may better be said to have been a coincidence merely, since there is no crime to which it might not attach. Nor would a conviction for the theft here charged, necessarily negative guilt as to the crime of being an accessory after the fact.

Upon the remaining branch of this question as to whether an information may charge in its one count a felony as having been done by two defendants, and in another count thereof charge one of the defendants with having alone committed another and different crime, defendant also makes strenuous contention. In the instant case, upon the facts of the second count as shown in evidence as well as under the law applicable thereto, Scott was guilty of no crime for permitting himself to be harbored, or aided or assisted to escape so as to avoid ar-

**Misjoinder of Defendants.**

rest, trial, conviction and punishment for the theft of the horse charged against him in the first count. Scott had never been in custody on this charge, so at law he had the right to escape if he could, whatever view casuists might take of the moral phase. He was in the case but the mere passive agent through whom defendant, as was charged, committed, and without whom defendant could not have committed, the offense laid in the second count. Scott in a sense bore in law the same relation to the subject-matter of the second count, as the party assaulted bears to the subject-matter of an assault with intent to kill.

Clearly the joinder of parties defendant here was improper. It would be improper even in a civil action and be demurrable. [Sec. 1800, R. S. 1909.] Scott and the defendant could not be sued in one count of a petition in a civil action upon a note (say) made by both, and defendant alone sued in another count of the identical petition upon an obligation with which Scott had nothing to do, and to which he was not a party against whom a judgment would lie.

The case of State v. Lehman, 182 Mo. 424, discusses fully the question of joinder of different defendants in the same count of an indictment. Under the facts in that case a joinder was held proper. That case was correctly held under the facts there in judgment, and no other view was possible. Had any other holding been made such holding would have been so vulnerable for other objections as that no conviction of the defendants or any of them would ever have been possible in law. As the learned judge who wrote the opinion of the court in that case, said:

"The general rule must be conceded, that where the offense of several defendants are separate and distinct, arise out of separate and distinct agreements or transactions, they should not be joined in the same indictment, but that is not this case." [l. c. 452.]

It follows that the motion to quash was well taken for both, or either, of the misjoinders charged therein as occurring in the information.

II. It is contended by defendant that the court erred in giving instruction numbered 4 on the presumptions arising from the recent possession of stolen property. In this, in the light of the evidence here, we think the defendant's contentions are well-founded, in point of fact, but that in the light of the conditions by which we are confronted in the record, the question raised by the objection is wholly academic. The instruction objected to has reference wholly to the offense of stealing the horse. On this charge defendant was not convicted; so it is a little difficult to see wherein he was injured. We are not passing upon the contents of the instruction complained of here; we are merely considering whether upon the admitted facts any presumption of guilt accrued from the fact of the possession of the horse by the defendant on the day following the theft thereof. Where the manner of getting the actual possession of property which has been recently stolen is admitted and fully explained by the evidence in the case, as was done in the instant case, and where the only question in issue is the capacity in which defendant holds such possession—whether feloniously or innocently—no presumption can arise against defendant from the mere admitted or known fact of possession. This instruction ought not to have been given. [State v. Warden, 94 Mo. l. c. 651.] It had no place in the record under the admitted facts, but for the reasons suggested, since defendant was not convicted of the offense with which the instruction had to do, he may not, we opine, successfully complain. If it be urged that the instruction was competent because the fact of possession tended to prove the *scienter* here necessary in law, then the same reasoning applies. It was as impotent for the one reason as for the other.

*Margin note:* Presumption: Possession of Recently Stolen Property.

III.  Touching defendant's complaint that the court *nisi* ought to have instructed on circumstantial evidence, we may say there is no evidence in the record to justify the giving of an instruction upon circumstantial evidence. Why we take this view, we need not discuss since this case must be reversed for other reasons.

Circumstantial Evidence: Instruction.

A general attack is made also upon the instructions given in the case, and upon all of them.  Without taking the time or space to pass upon them all, we may say in passing that the instruction given on presumption of innocence, burden of proof and reasonable doubt, is not in the best form. To say no more it does not require the reasonable doubt which will justify acquittal to "arise from a consideration of all of the evidence in the case," or words of similar import.  [State v. Cushenberry, 157 Mo. 168; State v. Temple, 194 Mo. 228; State v. Harper, 149 Mo. 514; State v. Maupin, 196 Mo. l. c. 174.]  We do not say that the instruction as given is so defective as to constitute reversible error, for it follows closely in substance that given in State v. Nueslein, 25 Mo. l. c. 124, which has been declared to be commendable.  [State v. Bond, 191 Mo. l. c. 564.]  But the better form of this instruction, as we show from the cases which we cite, refers in apt words as a basis for the doubt, to a consideration of all of the evidence in the case.

Reasonable Doubt.

IV.  It is also most seriously contended that there is not enough evidence in the record to sustain the charge of being an accessory before the fact upon which defendant was convicted.  We think this contention must also be sustained. Granting for the sake of the argument that there was proof sufficient to take the case to the jury on all of the other required elements in the case (State v. Miller, 182 Mo. l. c. 382), is there any substantial proof that defendant was in fact aiding

Aiding Thief to Escape: Insufficient Evidence.

and assisting Scott to escape in order that the latter might avoid arrest, trial and conviction? Upon this phase of the case Scott says that defendant suggested coming to Jefferson City and that the defendant paid the fare of Scott to Jefferson City. The record further shows *from the testimony offered by the State,* that when defendant left California in company with Scott, he requested an acquaintance to inform his (defendant's) wife that he had gone to Jefferson City, and that he did come to Jefferson City is not denied, but on the contrary proven by the State. Here was no secrecy, but a publicity which negatives the position of the State. When arrested, as he says, and as the State does not deny, he was on his way back to California. But that is not all, nor the most serious failure of proof. It was incumbent on the State to show that Scott was in fact trying to escape, before the defendant could be convicted for aiding him to escape. The testimony of Scott, upon whom alone the State relied for proof on this point, so far from showing that he was trying to escape, shows conclusively that he was not doing any such thing. Scott says *apropos* of this very point: *"I was not trying to get away at all; I had no intention of getting away;* I was aiming to go right back out there to Coleman's."

The story of Scott is throughout utterly incredible, and filled with numerous and palpable contradictions. It is not capable of reconciliation with much of the other testimony adduced by the State. At this distance, relying, as we must, upon the cold record, it would seem that the conviction of defendant was largely brought about by his own bad reputation; that having by an ill-spent life, earned the punishment meted out to him, he was convicted on what is called in the vernacular "general principles," rather than upon the evidence in the case. However much we might personally sympathize with the doctrine of a conviction on "general principles" when rightly applied in

a case of crying need, we can give no effect to it here, but must look to the record, which we do, and hold there is not evidence enough to sustain this conviction. For this and other reasons set out we reverse and remand the case, with the suggestion that if the State is not able materially to strengthen the case made, another trial will be a useless formality.

*Brown, P. J.,* and *Walker, J.,* concur.