THE STATE v. DOMINICO NERINI, Appellant.—6 S. W. (2d) 953.

Division Two, May 25, 1928.

*Waldo Edwards* for appellant.

*North T. Gentry,* Attorney-General, and *Smith B. Atwood,* Assistant Attorney-General, for respondent.

HENWOOD, C.—An information was filed in the Circuit Court of Macon County, by which appellant was charged with the unlawful manufacture of hootch, moonshine, corn whiskey in the first count, and the unlawful use of a still and other equipment, in the process of manufacturing intoxicating liquor for sale, in the second count. Upon trial, the jury found him guilty as charged in the second count and assessed his punishment at imprisonment in the penitentiary

for two years. He was sentenced in accordance with the verdict, and appealed.

Evidence offered by the State shows that, on July 24, 1926, appellant lived near the town of Bevier, in Macon County, and that about three o'clock in the afternoon of that day, the sheriff of the county and one of his deputies went to appellant's home with a search warrant. The officers saw there a man, known as "Shorty Sherman," two women and a little girl, but did not see appellant, at that time. The sheriff told appellant's wife he had a search warrant, and he and his deputy then proceeded to search the premises. No liquor or anything used in connection with the manufacture thereof was found in the house. In outbuildings near the barn and within fifty yards of the house, they found two stills, about fifty barrels of peach mash, eight or ten crates of peaches, about 1500 pounds of sugar, fifty or fifty-five, five-gallon jugs, and thirty-five gallons of liquor. In a summer kitchen, about eighteen feet from the house, they found a concrete vat filled with peach mash, and in a cave, under the summer kitchen and extending out from it, they found ten barrels of peach mash. Both of the stills were full of peach mash and fully equipped with coils, cooling apparatus, gas stoves and pressure tanks. One was in operation, with the gas stove lighted, the mash boiling, and the finished product of liquor dripping from the end of the coil into a jar; the other was "all set up" and ready for operation, but the gas stove under it was not lighted. The officers went back to appellant's home about midnight, found him getting ready to go to bed, and arrested him. The stills and a jug of the liquor were admitted in evidence, and the jug of liquor was handed to the jury for their inspection. The sheriff testified that he had smelled the liquor and tasted it, and that it was hootch or moonshine whiskey. Some of the equipments used in connection with the stills were exhibited at the trial and referred to by the sheriff and his deputy in their testimony.

Appellant took the stand in his own behalf and was permitted to testify through an interpreter, because of his inability to speak and understand the English language readily. He said he had been in this country sixteen years and had lived on the premises in question for six years; that he was a farmer, but worked in the mines during the previous year; and that he was helping his neighbor, Tom Rudkin, put up hay on the day of the search, and was away from home from seven o'clock in the morning until seven o'clock in the evening. When his attention was directed to the stills, he said they belonged to "Vaginilii Lorencelli;" and that he had never operated either of the stills, and had never made any

whiskey. The following question and answer appears in his cross-examination:

"Q. Were these two stills found on your premises? A. They were found there when I returned home."

In the absence of Tom Rudkin, the following stipulation was entered into between the State and appellant, and read to the jury:

"It is admitted that if Tom Rudkin were sworn he would testify that he lives in the vicinity of Number 8; that he owns a farm of forty or fifty acres and on the day in question here he was putting up hay and had been putting up hay for several days prior thereto and that this defendant had been working with him in his hay field all day on the day that this search was made and he has been subpoenaed here as a witness."

Mr. Jim Ronchetto, the interpreter, and Mr. Waldo Edwards, counsel for appellant, testified to appellant's previous good reputation for law-abiding citizenship.

1. It is earnestly contended that the trial court erred in submitting this case to the jury on both counts of the information. We do not agree with appellant's learned counsel in this contention. No motion to elect was filed, but the court, on its own motion, instructed the jury that they could not convict the defendant on both counts. That instruction reads as follows:

"The court instructs the jury that there are two counts in the information; in the first count, defendant is charged with unlawfully and feloniously manufacturing hootch or moonshine; in the second count, defendant is charged with unlawfully and feloniously using a still, worm, doubler and other distilling and brewing equipment and utensils in the process of distilling, brewing and manufacturing intoxicating liquor for sale. You are instructed that the defendant cannot be convicted on both counts, but may be convicted on the first count and acquitted on the second, or convicted on the second and acquitted on the first, or acquitted on both as you believe guilt or innocence is shown from the facts and circumstances proved in the case."

While it must be conceded that the first and second counts of the information charged two different offenses, as defined, respectively, by Section 21 and Section 2 of the Laws of 1923, pages 242 and 237, it must also be conceded that these two offenses arose out of the same transaction, and are so akin that a conviction or acquittal on one would be a bar to a prosecution for the other. Moreover, in this case, the appellant was actually acquitted of the offense charged in the first count of the information. "The legal test of permitted joinder

is not whether the offenses charged in different counts of a single information as having been committed in different ways are, or are not, defined and denounced by different sections of the criminal code. The test is: Whether such offenses arose out of the same transaction, and are so far cognate as that an acquittal or a conviction of one would be a bar to a trial for the other.'' [State v. Young, 266 Mo. 723, 731, 183 S. W. 305.] In dealing with a similar joinder of kindred offenses, and after an exhaustive review of the cases in this and other jurisdictions, Judge GANTT said: ''From the foregoing authorities we deduce the principle that it would have been proper for the circuit court to have instructed the jury on the evidence produced in this case, after defining what would constitute a forgery of the indorsement, and uttering the same, *that they might find the defendant guilty under either count of the indictment accordingly as they found the facts to be, but not upon both,* or have required the prosecuting attorney at the close of the evidence to have elected upon which count he would ask a conviction.'' [State v. Carragin, 210 Mo. 351, 371, 109 S. W. 553.] (Italics ours.) In the instant case, the trial court met the situation by instructing the jury in the manner indicated as a proper course in the Carragin case. It follows, therefore, that no error was committed in this particular. In further support of this conclusion, see State v. Christian, 253 Mo. 382, 161 S. W. 736; State v. Link, 286 S. W. 12; State v. Morelock, 291 S. W. 1078; State v. Brown, 296 S. W. 125.

II. It is also contended that the evidence is insufficient to sustain this conviction. In view of the plain facts of this case, this contention cannot be upheld. On the premises occupied by appellant as his home, and in close proximity to his house and barn, were found two stills, a concrete vat and fifty or sixty barrels filled with peach mash, eight or ten crates of peaches, 1500 pounds of sugar, fifty or fifty-five five-gallon jugs, and thirty-five gallons of hootch or moonshine whiskey. Both stills were fully equipped; one actually operating and actually producing illicit liquor; the other ''all set up'' and ready to operate. Appellant was temporarily absent from home, and no other person was found in charge of the liquor plants and the supplies and finished product on hand. From these and other facts and circumstances in evidence, it is, certainly, a fair and reasonable inference that appellant was the person engaged in using these stills for the manufacture of intoxicating liquor. [State v. Dailey, 280 S. W. 1044; State v. Cockrum, 278 S. W. 700; State v. Thogmartin, 270 S. W. 313.] And the inference is equally fair and reasonable that appellant was manufacturing intoxicating liquor for sale, from the amount of manufacturing equipment, raw materials,

empty jugs, and marketable liquor found on his premises. [State v. Widick, 292 S. W. 52.] Manifestly, each of these inferences may be drawn from direct and positive proof, and they are not, as counsel for appellant contends, built, one upon another. Appellant's denial of this charge, and his testimony that the stills belonged to another man, merely presented an issue for the jury, and, in our opinion, the evidence is amply sufficient to support their verdict.

The motion for a new trial contains other assignments of error, but, appellant's counsel, with commendable frankness, concedes, in his brief, that some of such assignments are too indefinite to be reviewable under the present rule (new Sec. 4079, Laws 1925, p. 198), and that the others relate to questions which have been decided against his contentions since the appeal in this case was taken.

Our examination of the information and verdict discloses that they are both in approved form. Finding no error in the record, the judgment is accordingly affirmed. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.