**Vernon FORBES, Petitioner,**

v.

**E. E. HAYNES, Superintendent, Missouri Training Center for Men, Moberly, Missouri, Respondent.**

**No. 56224.**

Supreme Court of Missouri,
En Banc.

Feb. 22, 1971.

Dissenting Opinion Modified and Rehearing Denied April 12, 1971.

Roswell P. Henderson, Moberly, court appointed counsel for the petitioner.

John C. Danforth, Atty. Gen., Jefferson City, Howard L. McFadden, Gen. Counsel, Department of Corrections, Jefferson City, for respondent.

BARDGETT, Judge.

Habeas corpus. Petitioner is a prisoner in an institution within the Missouri Department of Corrections. He alleges his imprisonment is unlawful for the reason his term has expired. A writ was issued and a return filed thereto. The issue concerns the applicability of the mandatory consecutive sentencing provision of § 222.020, as amended 1959, to a person sen-

tenced to the Missouri Department of Corrections and who commits a subsequent offense while free on bond pending appeal. Is petitioner "under sentence" while his appeal is pending and when free on bond pending appeal having never been delivered to the department of corrections? Does the 1959 amendment to § 222.020 whereby the concluding phrase of the first sentence of the act was amended by deleting the words "may be held" and inserting the words "is held" require that petitioner be "held" under sentence at the time of the commission of the subsequent offense for the section to be applicable? Our answer is "yes" to both questions.

The facts are stipulated. Chronologically they are: On June 21, 1966, a jury in the Circuit Court of Clay County found petitioner guilty of tampering with an automobile and assessed his punishment at three years and on July 6, 1966, the court imposed sentence in accordance with the jury verdict. On July 8, 1966, petitioner filed notice of appeal and thereafter was released on bond pending appeal. On December 11, 1966, while petitioner was free on bond pending appeal, he committed the crime of burglary second degree and stealing and was so charged by information on January 11, 1967, in the Jackson County Circuit Court following preliminary hearing in the magistrate court, and on July 24, 1967, he was found guilty by a jury which assessed his punishment at two years on each charge. The Circuit Court of Jackson County thereafter sentenced petitioner to two years on the burglary charge and two years on the stealing charge and ordered that the two terms of two years each be served consecutively. The court was advised of the existence of the earlier sentence imposed by the Clay County Circuit Court on July 6, 1966, for tampering but no reference was made thereto in its judgment and sentence for burglary second and stealing.

On May 13, 1968, the judgment of the Clay County Circuit Court was affirmed by this court, the petitioner having failed to perfect his appeal, and on March 13, 1970,

the Clay County sentence was terminated by commutation of the Governor.

Petitioner contends the Jackson County sentence of four years commenced to run when imposed by the court and ran concurrently with the Clay County sentence of three years. Respondent contends that under § 222.020 the Jackson County sentence was consecutive to the Clay County sentence and did not begin to run until completion of the Clay County sentence. If petitioner's interpretation is correct, it is stipulated that he has served the Jackson County sentence (the longer of the two) and is entitled to be released from custody.

In 1959 the legislature amended § 222.020. For comparison purposes, the language which was deleted by the 1959 amendment is enclosed in parentheses and the language added by the 1959 amendment is italicized in the following draft of pertinent portions of § 222.020.

"The person of a convict sentenced to imprisonment in (the penitentiary is and shall be) *an institution within the state department of corrections is* under the protection of the law and any injury to his person, not authorized by law, is punishable in the same manner as if he were not under conviction and sentence; and if any convict (shall commit) *commits* any crime in (the penitentiary) *an institution of the department of corrections,* or in any county of this state while under sentence, the court having jurisdiction of criminal offenses in the county shall have jurisdiction of (such) *the* offense, and the convict may be charged, tried and convicted in like manner as other persons; and in case of conviction, the sentence of the convict shall not commence to run until the expiration of the sentence under which he (may be) *is* held. * * *"

Was petitioner "under sentence" at the time he committed the subsequent offense on December 11, 1966, even though he had not as yet entered any institution of the department of corrections and was free on bond pending appeal from the conviction,

judgment and sentence of the Clay County Circuit Court?

The phrase "under sentence" was not altered by the 1959 amendment to § 222.020 and it has been construed by this court prior to and since 1959 that a person on parole is under sentence. State v. Hicks, Mo., 376 S.W.2d 160; State v. Todd, Mo., 433 S.W.2d 550; Aguilar v. State, Mo., 452 S.W.2d 225; State v. Campbell, Mo., 307 S.W.2d 486; Herring v. Scott, Mo., 142 S.W.2d 670.

■ The opening words of 222.020 set forth one of the conditions requisite to its applicability, to wit, that the person be "sentenced to imprisonment in an institution within the state department of corrections". In the instant case, this condition was met on July 6, 1966, when the Circuit Court of Clay County, after overruling petitioner's motion for new trial, entered judgment and sentence, in accordance with the jury verdict, upon petitioner, and ordered him confined in the department of corrections of the State of Missouri for the period of three years. Then followed the orders directing the sheriff to convey the prisoner into the custody of the department of corrections without delay, there to be kept until the sentence is complied with or defendant is otherwise discharged by due course of law. This constituted the final judgment from which petitioner could take an appeal, and without which an appeal on his part would be premature. § 547.070, V.A. M.S.; Rules 27.09 and 28.03, V.A.M.R.; State v. Chase, Mo., 415 S.W.2d 731; State v. Bledsoe, Mo., 249 S.W.2d 457. At this point in time, the sheriff's right and duty to hold the defendant because of the tampering with a motor vehicle offense is no longer founded upon the existence of the charge against defendant nor upon the jury verdict but is found in the court's judgment and sentence of defendant to the department of corrections and the order to convey defendant to the department of corrections.

■ Rule 28.10, V.A.M.R., provides, inter alia, for a stay of execution in cases involving a sentence of death if an appeal is taken, and a sentence of imprisonment if an appeal is taken and defendant is admitted to bail pending appeal. In this case defendant did take an appeal and was admitted to bail pending appeal. Petitioner contends that by reason of the pending appeal, and of his being at liberty on bond pending appeal and not having been delivered to an institution of the department of corrections, his sentence was suspended while his appeal was pending. We do not agree. Rule 28.10 does not provide for a suspension of sentence. It provides for a stay of execution of the sentence. Rule 28.10(1) stays the execution of the death penalty if an appeal is pending; however, it could not be validly argued that while the convict's appeal is pending he is not under sentence. The same rule, 28.10(2) provides for the same stay of execution of a sentence less than death if an appeal is taken and the defendant is admitted to bail pending appeal. It is obvious that if bail pending appeal did not stay the execution of the sentence imposed then the admission to bail would be a futile and useless act. It does not follow however that the defendant on bail pending appeal is not under sentence as that phrase is used in § 222.020 for it is precisely the judgment and sentence that a defendant is under that is the basis for the appeal. We hold that a person sentenced to imprisonment in an institution within the state department of corrections and who has been admitted to bail pending appeal is "under sentence" as that phrase is used in § 222.020.

The second and more troublesome question is presented by one of the 1959 amendments to § 222.020 whereby the legislature struck out the words "may be" and inserted the word "is" at the conclusion of the first sentence of the act. Because of this amendment, the last phrase of the first sentence of § 222.020 provides "and in case of conviction, the sentence of the convict shall not commence to run until the expira-

tion of the sentence under which he *is* held." (Emphasis added.) By this amendment did the legislature intend to restrict the application of § 222.020 to those persons being *held* under sentence and not to require mandatory consecutive sentences in those instances where such persons are lawfully at liberty when the subsequent offense is committed? King v. Swenson, Mo., 423 S.W.2d 699, cited by respondent, did not involve offenses committed while petitioner King was lawfully at liberty but rather offenses committed while he was being held under sentence, and it is therefore inapposite to the issue of whether or not the statute requires that the convict be held in order for it to be applicable.

Although several cases have been decided by this court since 1959 involving the application of § 222.020 to persons on parole at the time of the commission of the subsequent offense and this court has held § 222.020 to be applicable on the grounds that such persons were "under sentence", we have not previously considered the effect, if any, of the 1959 amendment on the question of whether the person must be "held" under sentence for § 222.020, as amended in 1959, to be applicable. Thus in State v. Hicks, Mo., 376 S.W.2d 160, State v. Todd, Mo., 433 S.W.2d 550, and Aguilar v. State, Mo., 452 S.W.2d 225, all decided since 1959, this court held that § 222.020 was applicable to one on parole, and utilized either State v. Campbell, Mo., 307 S.W.2d 486, or Herring v. Scott, Mo., 142 S.W.2d 670, both decided prior to the 1959 amendment, as authority for its application holding that a person on parole is still "under sentence". As these cases indicate, the yardstick by which the applicability of § 222.020 was measured was whether or not the defendant was "under sentence" when on parole and not whether the statute required, in addition to being under sentence, that the defendant be held at the time of the subsequent offense. Prior to the 1959 amendment, this statute employed the words "may be held" and these words are surely subject to the construction that the person need not be in *fact held* under the previous sentence.

The words "may be held" can be accommodated to a person on parole or one at liberty on bond pending appeal, as either of those persons are nevertheless under sentence and it is a sentence under which the parolee *may be* held should the paroling authority choose to do so, as well as a sentence under which the court, under certain conditions, could order the person on bond pending appeal to be held.

"May be" has been held to mean "possible", "perhaps", and "by chance". State v. Howland, 153 Kan. 352, 110 P.2d 801. "May be granted" has been held to be intransitive and "to be able to be granted". Chicago Pheumatic Tool Co. v. Zeigler, C.C.A.Pa., 151 F.2d 784, 791. "May" can be used to denote "power" or "being able" to do an act. Webster's Third New International Dictionary, p. 1396. Prior to the 1959 amendment to § 222.020, the first sentence had to qualify merely as one under which "he *may be* held". In other words, it was required that there be some authority (court or State Board of Probation and Parole) that had the power, under the sentence, to hold the defendant should that authority choose to do so. It was not required that the authority be exercised and the defendant be held in order for § 222.020 to be applicable.

Contrast then the amendment that inserted the words "is held" for "may be held". Webster's Third New International Dictionary, p. 1197, defines "is" as "that which is; *specif*: that which is factual, * * * actually the case * * *." "Is" connotes an existing fact. It is subject to the interpretation that the power to hold has been exercised and that which previously was capable of performance has been performed and now exists. In short, that the defendant *is held* under sentence.

In Anthony v. Kaiser, 350 Mo. 748, 169 S.W.2d 47, 48 (1943), this court, in construing another provision of this same statute, adhered to the rules of statutory construction applicable to penal laws as set forth in State v. Butler, 178 Mo. 272, 77 S.W. 560, 572 (1903), and State v. Taylor,

345 Mo. 325, 133 S.W.2d 336, 341 (1939), and said: "Penal and criminal statutes, such as the one before us 'are generally "construed strictly as to those portions which are against defendants, but liberally construed in those which are in their favor —that is, for their ease and exemption. No person is to be made subject to such statute by implication, and, when doubts arise concerning their interpretation, such doubts are to weigh only in favor of the accused." ' "

Adhering to the long-established rules of statutory construction of penal laws, effect can be given to both the general purpose of § 222.020 and the 1959 amendment. When § 222.020 is considered in its entirety, it is seen that it initially provides that persons under sentence to imprisonment to the department of corrections are under the protection of law, and injury to their persons not authorized by law is punishable. It then continues on with the provision that the prisoner is also amenable to trial and conviction for the subsequent offense and makes the second sentence consecutive to the first (to the sentence under which he is held at the time the second offense is committed).

The purpose of the latter portion of § 222.020 is to provide fellow prisoners and those persons who have the duty of *holding* persons under sentence, whether they be held in a county jail as was the case in Allen v. Hall, 196 Mo. 226, 95 S.W. 415, or held in a vehicle transporting them through various counties to the place designated by the department of corrections, or by any other method, with additional protection and to deter violence and disruption. The additional protection being the deterrent effect of a consecutive sentence if, while the prisoner is being held, he commits another offense. Thus, the total context of this section relates to persons being held and not to persons lawfully at liberty.

We believe the 1959 amendment which changed the phrase "may be held" to "is held" clearly evidenced a legislative intent to restrict the application of § 222.020 to those persons who are being held under sentence at the time of the subsequent offense. If, arguendo, the statutory amendment left doubt as to the legislative intent, then the doubt must be resolved in favor of the accused, and the same result is reached. Anthony v. Kaiser, supra, State v. Butler, supra, State v. Taylor, supra.

The original and present provision of § 222.020 relating to the commission of the subsequent offense "in any county of this state while under sentence" makes this section applicable even though the offense is not committed in an institution within the department of corrections. Thus, the legislature recognized that a person under sentence to the department of corrections must, of necessity, be held at least temporarily in a county jail and must be transported through various counties on his way to the confining institution, and the persons holding such convict may be county sheriffs or others who may or may not be employed by the department of corrections. This provision, however, does not nullify the requirement that the person must be under sentence to an institution within the department of corrections nor the 1959 amendment requiring that he be held under such sentence at the time the subsequent offense is committed.

Concern has been registered that a convict who escapes and commits an offense while illegally at large may avoid the application of § 222.020. We do not believe the legislature intended such a result nor is it a necessary consequence of our holding in this case. An escapee is not lawfully at liberty and he cannot avoid being subject to § 222.020 by the criminal act of escaping. He is still, in legal contemplation, being held under sentence for he is not lawfully at liberty.

We adhere to the decisions in State v. Campbell, supra, and Herring v. Scott, supra, decided prior to the 1959 amendment to § 222.020, and State v. Hicks, supra, State v. Todd, supra, and Aguilar v. State, supra, decided since 1959, wherein it was

held that the person of a convict is still under sentence even though he is lawfully at liberty on parole. To the extent that the cited cases conflict with our holding today with respect to the applicability of §.222.-020, as amended 1959, they should no longer be followed.

■ In the instant case petitioner was under sentence to the department of corrections but lawfully at liberty on bond pending appeal and, consequently, was not being held when he committed the subsequent offense. In these circumstances § 222.020, V.A.M.S., was not applicable to petitioner and, therefore, it was not required that the Jackson County sentence be served consecutively to the Clay County sentence.

■ At the time petitioner was sentenced in Jackson County, the court knew that petitioner was under sentence for the prior offense in Clay County and in its discretion could have imposed either a consecutive (cumulative) or a concurrent sentence. The subsequent sentence contained no direction that it be consecutive and consequently an intention is thereby evinced that the sentence should be served concurrently. Anthony v. Kaiser, supra, 169 S.W. 2d loc. cit. 50.

As set forth, supra, it is stipulated that petitioner has served the longer of the sentences imposed. Therefore, with no applicable statutes making the sentences consecutive to each other and, in the absence of direction in the sentence on the subsequent offense to that effect, we hold under the rule stated in Anthony v. Kaiser, supra, and State ex rel. Meininger v. Breuer, 304 Mo. 381, 264 S.W. 1, 2, that petitioner's terms were concurrent, and he is therefore entitled to his discharge. It is so ordered.

SEILER and MORGAN, JJ., and SHANGLER, Special J., concur; FINCH, Acting C. J., dissents in separate dissenting opinion filed; DONNELLY and HOLMAN, JJ., dissent and concur in dissenting opinion of FINCH, Acting C. J.; HENLEY, C. J., not sitting at time cause was submitted.

FINCH, Judge (dissenting).

I agree with the conclusion in the principal opinion that petitioner, even though at liberty on bond pending appeal from his conviction, was under sentence within the provisions of § 222.020, V.A.M.S., when he committed the offense in Jackson County. However, I cannot agree with the conclusion that the 1959 amendment indicates a legislative intention to change the law so as to require thereafter that the person actually be held in custody for the section to be applicable. Hence, I respectfully dissent from the principal opinion.

Section 222.020, in exactly the same language which existed immediately prior to the 1959 amendment, first appeared as § 1668, RSMo 1879. The section was contained in Chapter 24 thereof dealing with Crimes and Criminal Procedure and was located in. Article IX entitled "Miscellaneous Provisions and Matters of Practice." That section has been construed on various occasions with reference to the question of whether it required a person under sentence to be held in actual custody at the time of the commission of the second offense. ·In Herring v. Scott, Mo., 142 S.W.2d 670, 671, this court said: "There is no doubt about the fact that the statute applies to the petitioner. He did commit the second crime of robbery in Jackson County while under sentence for the first crime of robbery. *The fact that he was out on parole when the second offense was committed, did not make him any the less 'under sentence' for the first offense."* (Emphasis supplied.)

In State v. Campbell, Mo., 307 S.W.2d 486, cert. den. 78 S.Ct. 708, 356 U.S. 922, 2 L.Ed.2d 718, the court dealt with a situation wherein the offense of assault with intent to commit robbery was committed while the defendant was on parole from a life sentence. The question presented involved whether the trial court, in imposing

a two-year sentence for the assault, had authority to provide that it should run concurrently with the life sentence, in view of the provisions of § 222.020. In holding that it did not, this court said, 1.c. 490: *"The fact that the defendant was on parole and not confined to the penitentiary at the time of the commission of the second offense did not prevent the application of section 222.020 because, as held in Herring v. Scott, Mo., 142 S.W.2d 670, 671 [2]: 'The fact that he was out on parole when the second offense was committed, did not make him any the less "under sentence" for the first offense.'"* (Emphasis supplied.)

Both Herring and Campbell were decided before 1959. In cases decided since 1959 this court has continued to follow the Herring and Campbell cases and applied § 222.020 to persons under sentence but on parole at the time of the second offense. For example, in State v. Hicks, Mo., 376 S.W.2d 160, 163, this court, in referring to § 222.020, said: "It is clearly applicable both to persons on parole and on probation." See also State v. Todd, Mo., 433 S.W.2d 550, 554, cert. den. 89 S.Ct. 1022, 394 U.S. 910, 22 L.Ed.2d 221, and Aguilar v. State, Mo., 452 S.W.2d 225, 226.[1] At no time since the decisions in Hicks, Todd and Aguilar has there been any legislative action indicating that the general assembly considered the decisions in those cases to be contrary to the legislative intent expressed in the 1959 amendment.

Apparently, the principal opinion concedes that prior to 1959, § 222.020 did apply to one on parole and did not require that the person actually be in custody when the second offense was committed. It holds, however, that the 1959 amendment changed the statute so that thereafter it required not only that the person be under sentence but also in actual custody when the second offense was committed. Hence, it

necessarily overrules Hicks, Todd and Aguilar insofar as they held that after 1959 the statute was applicable to one on parole.

The decisive question presented then is whether the 1959 amendment discloses a legislative intent to change the law so as to make it applicable thereafter *only to one under sentence held in actual custody.*

In considering the effect of the 1959 amendment, the principal opinion focuses on and considers only the substitution of the words "is held" for "may be held" and concludes therefrom what the general assembly intended. It gives no consideration to the other changes in language and how they relate to the change in words on which the principal opinion focuses. I submit that the intent of the legislature cannot be so determined. Rather, the entire legislative change should be considered. When that is done, it is clear that the principal change made by the 1959 amendment was to conform the section to the new system established by legislative enactment wherein a convicted defendant was sentenced to the department of corrections rather than the penitentiary, as before. See § 216.208, V.A.M.S.

This conclusion as to the effect of the 1959 amendment is supported by the legislative history of said amendment. The change in the statute in 1959 was accomplished by Senate Bill No. 87, introduced in the 70th General Assembly. This was a revision bill, as shown by the word "Revision" immediately preceding the caption "Senate Bill No. 87." In addition, the bill bears the notation "R–44," indicating that it is accompanied by Revision note 44. Senate Bill No. 87 revised three existing statutory sections, viz., §§ 222.010, 222.020 and 222.030. On the printed copy of the bill under § 222.020, as introduced in and considered by the Senate, appear the words,

---

1. In Aguilar v. State and in State v. Campbell, supra, there is language stating that § 222.020 provides for mandatory consecutive sentences if a convict under sentence shall be *convicted* of another offense. The statute refers to time of *commission* of the second offense, not the *conviction* therefor.

"See note under section 222.010." The latter note, appearing in the bill immediately following § 222.010 and immediately preceding § 222.020, reads as follows: "Under section 216.208, RSMo 1957 Supp., adopted in 1957, all commitments to the penitentiary or to the intermediate reformatory are required to be hereafter made to the department of corrections generally. This and section 222.020 are changed accordingly." [2]

It is clear from the foregoing notes on Revision Senate Bill No. 87 that the Senate was told by Senators Spencer, Gibson, Noble, Hawkins and Crain, who introduced the bill, that the changes made in §§ 222.010 and 222.020 were made for the purpose of conforming the statute to the new sentencing procedure provided in § 216.208. No other change was stated or even intimated in the revision note. It is thus apparent that the sponsors of the bill did not find in the language of their revision the intention which the principal opinion now says it expressed, and it likewise is clear from the explanatory note that the sponsors did not intend the revision to accomplish any such change. To hold otherwise would mean that they withheld from the Senate a portion of what they intended the bill to do. It is crystal clear that the Senate was not informed by the explanatory revision note that the bill would have any such effect.

Our function in construing such a statute is to ascertain and enforce the legislative intent. In an instance such as this, when the legislative record of a bill so clearly expresses its purpose, we should interpret the statute according to that intent and should not ascribe to the statute an intention which obviously, from the record they made, the general assembly did not intend.

The nature and purpose of revision statutes can be noted from the language of § 3.120(2), V.A.M.S., which, insofar as pertinent, provides as follows: "The committee shall establish a subcommittee on revision which shall conduct and supervise a continuing program of statute revision which is designed to correct defectively enacted or worded statutes without changing the substantive provisions thereof to the end that the statute publication may become a more accurate and authentic statement of the laws of the state. * * *" The change contemplated by Senate Bill No. 87, as shown by the revision note, is consistent with such a purpose. A meaning such as that ascribed by the principal opinion is not.

Section 222.020, as it appeared in Senate Bill No. 87, is shown in a footnote.[3] The italicized words in the section were added and the words through which a line were drawn were deleted by the revision act. In addition to three changes whereby reference to the state department of corrections and its institutions was substituted for the word "penitentiary," there were several changes in phraseology. These changes as

2. There also was a revision note in the bill following § 222.030 which explained the changes made in that section by the revision. This explanatory note is not set out herein because it does not pertain to or indicate the meaning of the changes in § 222.020.

3. 222.020. The person of a convict sentenced to imprisonment *in* ~~in~~ an institution within the *state department of corrections* ~~penitentiary~~ is ~~and shall be~~ under the protection of the law and any injury to his person, not authorized by law, *is* ~~shall be~~ punishable in the same manner *as* if he were not under conviction and sentence; and if any convict ~~shall~~ commits any crime in ~~the penitentiary~~ *an institution of the department of corrections,* or in any county of this state while under sentence, the court having jurisdiction of criminal offenses in ~~such~~ *the* county shall have jurisdiction of *the* ~~such~~ offense, and *the* ~~such~~ convict may be charged, tried and convicted in like manner as other persons; and in case of conviction, the sentence of *the* ~~such~~ convict shall not commence to run until the expiration of the sentence under which he ~~may be~~ *is* held. ~~provided, that~~ If ~~such~~ *the* convict ~~shall be~~ *is* sentenced to death, *the* ~~such~~ sentence shall be executed without regard to the sentence under which said convict ~~may be~~ *is* held in the ~~penitentiary~~ *correctional institution.*

they appear in the section were as follows: "is and shall be" was simplified by deleting "and shall be." Next, "is" was substituted for "shall be." Next, "shall commit" is changed to "commits." The next four changes substituted "the" for "such." Then appears the change on which the principal opinion focuses, i. e., substitution of "is" for "may be" preceding the word "held." Finally, the words "provided that" are deleted and a new sentence created. In that final sentence "such" is changed to "the," "shall be" is changed to "is," "such" is changed to "the," and "may be" is changed to "is." I submit that all of these changes (other than the ones substituting words for "penitentiary") were merely to simplify and clarify the language of the section and to express it in positive rather than in hypothetical terms.

These changes in language are easily understood when one examines the manual with reference to bill drafting used by the committee on legislative research, the office which drafts these revision bills. The manual cautions against the use of unnecessary language and sets other guidelines, including one that the statute should be drafted in the present tense. Examples are given. In one, for example, it is stated that a bill should say "officers who have canvassed" rather than "officers who shall have canvassed." The changes in phraseology made in § 222.020 were for such purpose and were not intended to accomplish a fundamental change in meaning of the statute.

In my judgment, there are several additional reasons for concluding that the substitution of the words "is held" for "may be held" did not express a legislative intention henceforth to require that the person be held in actual custody when the second offense was committed.

First, the structure of the sentence and location of the words "under which he is held" indicates that they are explanatory of and relate to the sentence which must be served or completed before any sentence on the second offense commences, and they have no reference to the earlier portion of the section which required only that the convicted person be "under sentence" at the time of the commission of the second offense for the statute to be applicable. To illustrate, the section provides that " * * * if any convict commits any crime * * * while under sentence * * * [he] may be charged * * * as other persons; and in case of conviction, the sentence * * * shall not commence to run until the expiration of the sentence under which he is held * * *." It will be noted that the portion describing the person for purposes of applicability of the statute as one "under sentence" is separated by a semicolon from that part which describes what happens in the event of a conviction. The first portion describes the person and authorizes a charge against him. Then following the semicolon, the words describe what shall be the situation in the event of a conviction on the second charge. In my judgment, the sentence structure makes it clear that the words "is held" have no application to the language describing the convict "under sentence" to whom the section applies.

Secondly, adoption of the principal opinion necessitates a conclusion that the general assembly, by the 1959 amendment, intended to nullify this court's rulings in *Herring* and *Campbell* that the section was applicable to persons on parole. This is true because the principal opinion holds that the amended section applies only to persons being held in custody and not to those lawfully at liberty. A person on parole is lawfully at liberty. I cannot find anything in the 1959 amendment to indicate any such legislative intent. If the general assembly had contemplated such a change and had intended thereafter that persons on parole should be free from application of § 222.020, they would have mentioned specifically that the act was not to apply to one on parole or, at the very least, they would have expressed such intention more clearly by adding to the words "while under sentence" some additional language such as "and held thereunder" or "and in

actual custody." The general assembly would not have undertaken to nullify the decisions in Herring and Campbell by relying on whatever interpretation we might place on their action in substituting the word "is" for "may be." Certainly, the explanatory note in the bill with reference to § 222.020 would have stated the intention to change the statute if it had contemplated the change ascribed thereto in the principal opinion.

In the third place, if we accept the premise of the principal opinion that the amended act requires the convicted person to be held in actual custody in an institution or by some officer at the time of the second offense, we necessarily would have to conclude that the general assembly intended the statute to mean that if a person escapes from an institution or the custody of an officer and thereafter, while free as a fugitive, commits a second offense, § 222.020 would not apply. He would not then be in actual custody any more than one on parole is in actual custody. If the act would not apply to one on parole, as the principal opinion concedes, it would not apply to one at liberty as the result of prior escape. I cannot believe the general assembly so intended.

I recognize that the principal opinion attempts to avoid this dilemma by saying that one who has escaped is not at liberty in legal contemplation and hence would be considered to be in custody. I find no basis for this conclusion. It is not support-

ed by any language in the 1959 amendment. Nothing is said in the act about one lawfully held in custody as contrasted to one unlawfully at liberty.

Furthermore, the status of an escapee as determined in the principal opinion is inconsistent with that portion of the opinion which advances the purpose of § 222.020 as being "to provide fellow prisoners and those persons who have the duty of *holding* persons under sentence * * * with additional protection * * *." That purpose would have no application to someone at large, even if as an escapee, because he is not then being held by any officer and is not then confined with fellow prisoners.[4]

Finally, the result of the holding in the principal opinion is that persons who can afford bail are given preferential treatment to those who can not. One who is under sentence and in custody who commits a second offense is subject to the mandatory sentencing requirements of § 222.020. In contrast, one (such as petitioner herein) who is under sentence but free on bail pending his appeal is exempted from its provisions.[5] The principal opinion necessarily holds that the general assembly, by its 1959 amendment, intended this disparity in treatment. I cannot agree.

I would hold that § 222.020 made it mandatory that the Jackson County sentence be consecutive to the Clay County sentence, just as before the 1959 amendment, and I would quash the writ of habeas corpus previously issued.

4. As a matter of fact, I find it hard to understand the basis upon which the principal opinion concludes that the purpose of the section is to provide protection for fellow prisoners or ones *holding* the person under sentence when it is conceded that for most of the time the statute was in force (1879 until 1959) it applied to persons under sentence but on parole as well as those in custody. I do not believe that was the purpose of the statute at all.

5. Without making any reference to the case of State v. Hyde, 234 Mo. 200, 136 S.W. 316, the principal opinion would seem to cast serious doubt upon the statement in said opinion, 136 S.W. l.c. 334, "In a sense, the effect of the bail bond was to place the defendant in the custody of his bondsmen; but he was still in custodia legis."