**STATE of Missouri, Respondent,**

v.

**David NEAL, Appellant.**

**No. 57861.**

Supreme Court of Missouri,
En Banc.

Sept. 9, 1974.

Rehearing Denied Oct. 14, 1974.

**546**

John C. Danforth, Atty. Gen., G. Michael O'Neal, Dan Summers, Asst. Attys. Gen., Jefferson City, for respondent.

Robert C. Babione, St. Louis, for appellant.

HIGGINS, Commissioner.

David Neal, charged in Count I of an information with robbery, first degree, by means of a dangerous and deadly weapon, and in Counts II and III with assault with intent to kill with malice aforethought, was convicted by a jury which assessed his punishment at imprisonment for ten years on each of Counts I and II, and for five years on Count III. Sentences and judgment were rendered pursuant to the verdicts with the sentences to run consecutively. Rule 24.04, V.A.M.R.; §§ 560.120, 560.135, 559.180, 546.480, RSMo 1969, V. A.M.S. Appellant asserts presence of questions involving construction of the Constitutions of the United States and Missouri.

Count I alleged that Earl Fingers and David Neal "acting with another," on October 15, 1971, in the City of St. Louis, feloniously and by means of a pistol, did rob and take $282, the property of William Cordes, d/b/a Cordes Hardware, in the care and custody of Johnnie Walton, by putting Johnnie Walton in fear of immediate injury to his person; Count II alleged that Earl Fingers and David Neal, on October 15, 1971, in the City of St. Louis, feloniously, and of malice aforethought, did make an assault upon William O. Cordes, with a pistol, with intent to kill William O. Cordes; Count III was identical to Count II except that the assault alleged was upon the life of Johnnie Walton.

Appellant does not question the sufficiency of evidence to sustain the convictions, and a statement may be quoted from his brief which demonstrates a submissible case on each count of the information.

"At about 5:45 p.m. on Friday, October 15, 1971, James Walton and William Cordes were working at the Cordes Hardware, * * * 1125 Salisbury in the City of St. Louis.

"Three men came to the store. One of them engaged Cordes in a conversation * * *. Shortly thereafter Cordes was hit over the head from behind by one of the other men. That man had a weapon, a thirty-two or smaller.

"A third man, with a thirty-eight revolver, got behind Walton and told him to get on the floor. Walton threw up his hand, and a shot was fired, which caused the loss of a finger * * *. After the shot Walton fell to the floor next to Cordes. Walton was then ordered to get up and open the register by the man who had shot him. * * * Cordes testified that approximately $284 was taken from his place. After the money was taken, Cordes and Walton were instructed not to move, and the men left without doing anything else.

"Cordes was not able to identify any of the participants in the robbery. Walton identified appellant as the individual who struck Cordes. * * *

"Appellant was arrested on October 22, 1971 and placed in a police lineup. Walton and Cordes were present when the lineup was conducted, and Walton identified appellant, but Cordes did not.

"Appellant testified that on the day of the robbery he was sick with a stomach disorder. * * * he did not leave his house after 1:15 p.m. and * * * his girlfriend was there with him between 4:15 and about 7 or 7:30. He denied knowing Earl Fingers who was charged as a co-defendant, and he denied that he had even been near the Cordes Hardware on the date of the robbery. Michele Burnett testified in corroboration of the testimony offered by appellant."

Although tacitly conceding the sufficiency of the State's case, appellant contends (III) that the court erred in refusing his tendered instruction A regarding identification testimony: "You are instructed so far as the identity of the defendant is concerned, that if you believe, from the evidence and the circumstances proved, that there is reasonable doubt whether James Johnny Walton might not be mistaken as to identity, then you would not be authorized to convict the defendant. The corroborating circumstances tending to establish his identity must be such as, with other testimony, produces a degree of certainty in your minds so great that you can say that you have no reasonable doubt of the identity of the defendant."

He argues that criminal agency was established solely by witness Walton; that the tendered instruction amounted to "a converse of the essential element of criminal agency"; that "the defense * * * rested on the theory that the witness [Walton] was mistaken because appellant was elsewhere," and that only by Instruction A "could counsel realistically argue the subject to the jury."

Instructions 3, 4, and 5 submitted Counts I, II, and III to the jury. Each required the jury to find beyond a reasonable doubt that the defendant committed the acts necessary to conviction of the offenses thus submitted. Instruction 7 submitted defendant's alibi, instructing the jury that if it had a reasonable doubt regarding defendant's presence at the time and place of each offense, it should find defendant not guilty.

 In the circumstances of this case the subject matter of requested Instruction A was argumentative and was adequately covered by Instructions 3, 4, 5, and 7, and the court was thus justified in refusing the requested instruction. State v. McGowan, 432 S.W.2d 262 (Mo.1968). See also State v. Taylor, 472 S.W.2d 395 (Mo.1971);

State v. Smith, 358 Mo. 1, 212 S.W.2d 787 (1948); State v. Tomlin, 467 S.W.2d 918 (Mo.1971); and compare State v. Murphy, 415 S.W.2d 758 (Mo. banc 1967), where it was error to refuse an instruction on identification only because the defense theory was that even though the evidence may have shown defendant in the store at the time of the alleged check cashing offense, she was misidentified as the person who wrote and presented the check. By way of contrast, appellant denies his presence in Cordes Hardware and presents affirmative evidence that he was elsewhere. Uncertainty, if any, with respect to witness Walton's identification in this case was properly for the jury to resolve under the given instructions.

Appellant contends (I) that submission of Counts II and III subjected him to multiple conviction and punishment for a single offense without any statutory authority and contrary to his constitutional rights "because the facts relied upon for the assaults alleged in those counts were exactly the same facts which were required to establish the personal violence or fear of immediate injury which were necessary elements of the robbery submitted in Count I."

He contends (II) that the court "improperly combined" Rule 24.04 and Section 546.480, supra, "to punish Appellant for exercising his Constitutional rights to [jury] trial."

■ These contentions present no claim of error with respect to Count I, robbery, first degree, by means of a dangerous and deadly weapon; and the judgment, insofar as it convicts defendant and sentences him to ten years' imprisonment for that offense, must, therefore, be affirmed. State v. Smith, 491 S.W.2d 257, 258 (Mo.1973).

■ With respect to Point I, the 3-count information in this case was authorized by Rule 24.04, which provides in part that all offenses which are based upon the same act or upon two or more acts which are part of the same transaction or upon two or more acts or transactions which constitute parts of a common scheme or plan may be charged in the same information in separate counts, or in the same count when authorized by statute. See State v. Walker, 484 S.W.2d 284 (Mo. 1972), approving a single information charging defendant with one count of rape and two separate and different counts of sodomy, all in the same "transaction" against one prosecuting witness.

Appellant's claim that the procedure authorized by Rule 24.04 subjected him to multiple punishments has been the subject of recent cases, and they require that it be denied in part and sustained in part.

■ First, the robbery in this case of Cordes Hardware by taking money from the custody of Johnnie Walton, Count I, was the result of the assault committed upon Johnnie Walton and it was the identical assault also charged in Count III. To thus split the single crime of robbery and prosecute it in Count I and a second time in Count III as an assault violated the rule against double jeopardy. State v. Richardson, 460 S.W.2d 537 (Mo. banc 1970). Accordingly, Count III was improperly submitted; and the judgment, insofar as it convicts defendant and sentences him to five years' imprisonment for the offense there charged, must, therefore, be reversed.

■ Second, since the robbery of Cordes Hardware was the result of the assault against Johnnie Walton, the assault upon William O. Cordes, charged in Count II, was, by the same reasoning, a separate crime; and trial of such assault with the separate crime of robbery accomplished by the assault upon Johnnie Walton in Count I, did not place defendant in double jeopardy. See State v. Moton, 476 S.W.2d 785 (Mo.1972), where defendant's conviction of robbery of one gas station attendant from whom he obtained money did not bar subsequent prosecution for robbery of a second gas station attendant from whom defendant also obtained money, on a theory

of double jeopardy, where property was taken from both attendants, even though both robberies occurred almost simultaneously. See also State v. Smith, 491 S.W. 2d 257, supra, certiorari denied Smith v. State, 414 U.S. 1031, 94 S.Ct. 460, 38 L.Ed. 2d 322 (1973), where defendant was charged separately with the murder of two persons in a single transaction, and trial on one charge did not preclude trial on the second charge, even though substantially the same evidence was presented in both trials. Cf. United States v. Canty, 152 U.S.App.D.C. 103, 469 F.2d 114 (1972). In short, it may be said that this case involves two assaults: one upon Johnnie Walton in which he was shot and by which he was robbed of money in his custody; the other upon William O. Cordes in which he was struck on the head. Counts I and II were thus properly charged, tried, and submitted as two separate crimes arising from a single transaction. Rule 24.04, supra; State v. Johnson, 499 S.W.2d 371, 375[7–9] (Mo. 1973). Accordingly, the judgment, insofar as it convicts defendant and sentences him to ten years' imprisonment for the offense charged in Count II, with such imprisonment to commence at the termination of the imprisonment on Count I, must, therefore, be affirmed.

■ ■ By reference to Article I, Section 21, Constitution of Missouri, V.A.M.S., appellant suggests that his consecutive sentences are cruel and unusual punishment. Suffice to say that where a defendant is convicted of separate offenses and the sentences imposed are within statutory limits, as in this case, consecutive effect of such sentences does not constitute cruel and unusual punishment. Harris v. United States, 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959); Gebhard v. United States, 422 F.2d 281 (9th Cir. 1970); Crump v. State, 462 S.W.2d 809 (Mo. banc 1971); King v. Swenson, 423 S.W.2d 699 (Mo. banc 1968).

Section 546.480, supra, provides: "When any person shall be convicted of two or more offenses, before sentence shall have been pronounced upon him for either offense, the imprisonment to which he shall be sentenced upon the second or other subsequent conviction shall commence at the termination of the term of imprisonment to which he shall be adjudged upon prior conviction."

Under Point II appellant argues that this provision, when applied to a case of joined offenses under Rule 24.04, creates a situation which "limit[s] or unduly chill[s] the exercise of the right" to a jury trial; that it causes the imposition of additional punishment "because he exercised his right to trial by jury," and "the court must at least remand the case so that the sentences * * * will be concurrent with the sentence in Count I."

To support this argument, appellant asserts that "concurrent sentences could be imposed if he waived the right to [jury] trial. In such a situation he could plead guilty to one Count and be sentenced. Then he could proceed with the second Count and be sentenced to concurrent time."

■ The difficulty in appellant's position is that Section 546.480 applies in the same manner when a defendant pleads guilty to multiple counts prior to sentencing on any one count. Daniels v. State, 454 S.W.2d 17 (Mo.1970). There is no authority for appellant's proposition that if he had pleaded guilty as charged instead of going to trial that the court would take his guilty plea on Count I and sentence him on that plea prior to taking his guilty plea on Count II and pronouncing sentence on that count, and so on. Only in such circumstances could the court exercise the discretion to order the sentences to run concurrently. Appellant's assertion that had he pleaded guilty he would have received the benefit of such an exercise of discretion is pure speculation and conjecture. His citation, United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), is distinguishable. It declared a kidnaping statute unconstitutional which provided for the death penalty upon recommendation of

the jury upon trial of the issue of guilt and limiting the punishment to imprisonment upon guilty plea. Such was a case of greater penalty upon exercise of the right to jury trial. By way of contrast, this defendant was not subject to greater penalty upon jury trial than he would have been upon a plea of guilty. The penalty provisions would have been the same in either instance.

Judgment on Counts I and II affirmed; judgment on Count III reversed.

PER CURIAM:

The above Division I opinion by HIGGINS, C., is adopted as the opinion of the Court en Banc.

MORGAN, HOLMAN, HENLEY and FINCH, JJ., concur.

DONNELLY, C. J., concurs in separate concurring opinion filed.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

DONNELLY, Chief Justice (concurring).

I concur in the principal opinion, and file this concurring opinion because I believe there is an additional difficulty in appellant's position in that his failure to object to being tried and convicted of multiple charges at the same trial effected a waiver of his right to rely on the general "Missouri rule that a defendant may not be convicted at the same trial of two distinct felonies. . . ." State v. Terry, 325 S.W.2d 1, 5 (Mo.1959). In *Terry,* this Court said:

"Thus, inasmuch as there is no express prohibition against the conviction of a defendant of two distinct felonies at the same trial, and inasmuch as there appears to be no reason for the established rule in Missouri which should prevent a waiver of that rule, and inasmuch, as heretofore noted, an information or indictment in which are joined two distinct felonies is not bad as a matter of law, we are of the view that a defendant's failure to assign as error in his motion for new trial the action or inaction of the trial court which resulted in his conviction of two distinct felonies at the same trial, effects a waiver of his right to rely on the rule in question. In other words, if a defendant *prefers* that two distinct felonies with which he is to be charged be joined in one information, and if he *prefers* that he be tried on both those charges at one and the same trial, we perceive no reason why he may not so elect. We hold, therefore, that a defendant's failure to raise any question in his motion for new trial about the fact that or the procedure whereby he was convicted of two distinct felonies at the same trial and separately sentenced for each, should have the same effect as though defendant had specifically elected to be tried on both felonies at the same time."

The amendment of Rule 24.04 on December 7, 1970 (effective July 1, 1971), represented an effort to reconcile the "Missouri rule," supra, the *Terry* holding, and the "double jeopardy—collateral estoppel" holding in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469. I believe the ultimate effect of Rule 24.04, as amended, is as follows:

(1) When a defendant has been charged with more than one offense, other than burglary and stealing, in the same indictment or information, and moves for a severance of offenses before trial, the court *shall* order a severance of the offenses.

(2) When a defendant has been charged with more than one offense, other than burglary and stealing, in the same indict-

ment or information, and moves for a severance of offenses during trial but before or at the close of all the evidence, the court *may* order a severance of the offenses if it is deemed necessary to achieve a fair determination of that defendant's guilt or innocence of each offense. The court should consider whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law ·intelligently as to each offense.

(3) If a severance is granted a defendant, the granting of the severance shall not bar a subsequent trial of that defendant on the offenses severed. (Cf. ABA Minimum Standards, Joinder and Severance, §§ 2.1, 2.2).

BARDGETT, Judge (dissenting).

I respectfully dissent. In the instant case there was no waiver nor was there any consent to go to trial on multiple counts with the knowledge that the punishments assessed and the sentences adjudged on multiple convictions would be automatically consecutive. Just the opposite actually took place.

Prior to the start of the trial, the following proceedings were held outside the presence of the jury. Mr. Kasten was counsel for defendant.

"THE COURT: All right, Mr. Kasten, at this time, you have a Motion to Suppress Identification. It says, on the grounds that it would rest on a pre-trial confrontation which was unnecessarily suggestive and conducive to an irreparable mistaken identification. Are you ready to proceed in the Motion?

"MR. KASTEN: Before that, may I go on record that I mentioned to him the possible maximum punishment?

"THE COURT: Make the statement you want.

"MR. KASTEN: Your Honor, I did advise the defendant there is no maximum punishment on any of the charges that he is charged with.

"THE COURT: There's a maximum on robbery with a dangerous and deadly weapon. I understand the State is going to waive the death penalty.

"MR. KASTEN: There is no maximum on imprisonment in the other counts, and the jury can bring in consecutive sentences and it is possible for him to get one hundred years or many more years, and I explained this to him. After I told him the offer of the State, he still wants to proceed to trial. Isn't that right?

"DEFENDANT: Right.

"THE COURT: Do you understand the maximum and minimum sentence on each of the counts?

"DEFENDANT: Yes. .

"THE COURT: Do you understand the jury can assess punishment in this case? Do you understand that or not?

"DEFENDANT: Yes, sir.

"THE COURT: *Do you understand what he was telling you? They can give you consecutive or concurrent sentence? Do you understand that?*

"DEFENDANT: *Yes, sir.*

"THE COURT: *Do you want to proceed in trial?*

"DEFENDANT: *Yes, sir. I do."* (Emphasis mine.)

From the foregoing it is crystal clear that the defendant understood that the sentences would not be automatically consecutive but that the *jury* would have the discretion to decide whether the sentences would be concurrent or consecutive.

The statement by the court to the defendant that the jury would decide whether the sentences would be concurrent or consecutive was clearly erroneous. The jury never decides that question. Unless the sentences are consecutive as a matter of

law, the judge, not the jury, has the discretion to designate the sentences as concurrent or consecutive.

Nevertheless, the defendant was certainly entitled to rely upon the accuracy of the court's statements in deciding whether or not to proceed to trial or accept whatever offer it was that the state had made to him.

At this point it is observed that had the defendant accepted whatever offer the state made and entered pleas of guilty, the judge could have made the sentences concurrent by merely accepting a plea on count one and sentencing defendant and then accepting a plea on count two and sentencing defendant and ordering the second to be concurrent to the first. I have digressed at this point to note the foregoing in order to demonstrate the chilling effect on a jury trial that results from amended rule 24.04 being held to require consecutive sentences when a jury trial is had in view of the provisions of sec. 546.-480, RSMo 1969, V.A.M.S.

The court's instructions did not leave it to the jury to determine whether the sentences were to be concurrent or consecutive. The court instructed the jury that the punishment assessed by the jury on each of the counts upon which the jury found defendant guilty would be consecutive. And this was exactly opposite as to what the defendant was informed by the court at the beginning of the trial what the law was.

It is clear, therefore, that there was no consent to be tried on multiple counts with knowledge that the sentences would be automatically consecutive. We are not dealing with a record that is silent on the matter under which it might be argued that the defendant and his counsel might be presumed to know the law. Here we have a record wherein the defendant was told by the court that the sentences would *not be automatically consecutive* but that the jury had the discretion to decide that question.

The trial judge had no intention of misleading the defendant but the statement was incorrect. Apparently the defense counsel and the prosecutor also believed the law was as stated by the judge because no attempt at correction by either of them appears in the record.

In my opinion, the foregoing warrants a remand of counts one and two to the trial court for the purpose of having the trial court exercise its discretion with respect to concurrent or consecutive sentences and enter its order accordingly, regardless of the court's decision with respect to the interpretation of amended rule 24.04 and sec. 546.480, RSMo 1969, V.A.M.S.

In my opinion, the construction placed upon amended rule 24.04 by the principal opinion means that this court has changed substantive rights and has adversely affected the defendant's right to trial by jury. Art. V, sec. 5, Mo.Const.1945, authorizes this court to establish rules of practice and procedure and then provides, "The rules shall not change substantive rights, . . . (or) the right of trial by jury."

The substantive law of this state is that the defendant has the right to have the trial judge determine, in his discretion, whether sentences shall be consecutive or concurrent, except in those instances where the law mandates consecutive sentences. Sentences subject to the discretionary order of the trial judge are concurrent unless designated consecutive by the trial court. Anthony v. Kaiser, 350 Mo. 748, 169 S.W. 2d 47 (banc 1943); Forbes v. Haynes, 465 S.W.2d 485 (Mo. banc 1971). Prior to amended rule 24.04, there could not be multiple convictions in any one trial without the waiver or consent of the defendant except for burglary and larceny. State v. Terry, 325 S.W.2d 1, 4 (Mo.1959); State v. Christian, 253 Mo. 382, 161 S.W. 736 (1913). Therefore, the judge always had the discretionary power and opportunity to determine how the sentences would be served. The effect of this rule, as set forth in the principal opinion, deprives the

defendant of the judge's discretion in multiple count convictions because, procedurally, the conviction on the second count will be entered before the judge can sentence on the first count. As construed in the principal opinion, amended rule 24.04 has changed the substantive right of the defendant with respect to sentencing and is, in my opinion, in violation of Art. V, sec. 5, Mo.Const.1945.

It is important also to bear in mind that the statute, sec. 546.480, was enacted by the legislature, and the amended rule 24.04 was not a legislative enactment but rather was brought into being by the judicial branch of government which does not have legislative power but only practice and procedure rule-making power. This means that the interrelationship between sec. 546.480 and amended rule 24.04, and the apparent consequential effect of the two, was not considered by any single governmental body. Therefore, the statute and the rule cannot be considered as part of a unified or total scheme of criminal procedure or law, whereby the interrelationship between the two could be said to be intended by either one of the two branches of government. And, one must acknowledge if the effect of the two is to *require* consecutive sentences, then that effect is surely a substantial change regarding punishment.

In at least four cases which have been decided on appeal since the adoption of amended rule 24.04, it is seen that circuit judges did not construe amended rule 24.04 to require the application of sec. 546.480 to multiple count convictions and did order those sentences to run concurrently. State v. Johnson, 499 S.W.2d 371 (Mo.1973); State v. Henderson, 510 S.W.2d 813 (Mo. App.1974); State v. Hudson, 508 S.W.2d 707 (Mo.App.1974); State v. Brooks, 513 S.W.2d 168 (Mo.App.1973) (decided Dec. 17, 1973). In State v. Hudson, *supra,* and State v. Henderson, *supra,* the court of appeals, St. Louis district, held that sec. 546.-480 does not apply to sentences pronounced upon convictions under multiple count indictments and informations filed in accordance with amended rule 24.04. This is some indication that the operation of amended rule 24.04 did not clearly mandate the application of sec. 546.480 to multiple count convictions occurring in a single trial, or at least was not so understood or interpreted by other judges in this state. In State v. Johnson, *supra,* and State v. Brooks, *supra,* the question was not an issue on appeal.

Consecutive sentences are by their very definition an enhancement of punishment over concurrent sentences. The law of Missouri is that sentences are concurrent unless the trial judge orders them to be consecutive except where consecutive sentences are statutorily mandated. Anthony v. Kaiser, *supra*; Forbes v. Haynes, *supra.* Prior to amended rule 24.04, the counts contained in the instant indictment would have been separately prosecuted in separate indictments. If the defendant had been convicted of what is count two in this case in a second trial, the court would have determined the question of consecutive or concurrent terms, and the terms would have been consecutive only by the explicit order of the court. The only reason that two convictions can occur now, as they did in the instant case, is because this court authorized the multiple count trial for separate offenses by amended rule 24.04 under the practice and procedure rule-making power of Art. V, sec. 5, Mo.Const.1945. The question of whether or not the authorization of multiple count trials for separate offenses is procedural only is not an issue in this case. What is an issue is whether or not the effect of amended rule 24.04 (multiple count trials and convictions) with respect to sentencing, when considered in the light of sec. 546.480, RSMo 1969, V.A.M.S., changes substantive rights. In my opinion, the principal opinion demonstrates that amended rule 24.04, as construed in this case, deprives a defendant of the right to have the judge determine whether the sentences are to be consecutive or concurrent; requires sentences not previously consecutive as a mat-

ter of law to be consecutive; and enhances punishment in multiple count jury trials. These consequences constitute a substantial change in the substantive law of sentencing and, additionally, affect a defendant's right to trial by jury. In my opinion, the court is precluded under Art. V, sec. 5, Mo.Const.1945, from adopting a rule which has these effects and amended rule 24.04 is, therefore, unconstitutional as construed by the principal opinion under Art. V, sec. 5, Mo.Const.1945.

The defendant contends that the application of the mandatory consecutive provisions of sec. 546.480 to multiple convictions obtained pursuant to jury trial under amended rule 24.04 imposes a constitutionally impermissible burden upon his right to a jury trial in violation of Amend. VI, U.S.Const., citing United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). The principal opinion disposes of this contention by stating that the defendant was not subject to a greater penalty upon jury trial than he would have been on a plea of guilty and that the penalty provisions would have been the same in either instance.

I disagree. United States v. Jackson, *supra*, concerned the Federal Kidnaping Act, 18 U.S.C.A. sec. 1201(a) (1964). Under that Act a defendant who pleaded guilty or waived jury trial and was tried by the court could not be sentenced to death. A defendant who was tried and convicted by a jury could be sentenced to death. A defendant, in order to avail himself of a jury trial had to risk death, whereas other defendants ran no such risk. Of this matter the United States Supreme Court said, loc. cit. 581–583, 88 S.Ct. 1216:

"Under the Federal Kidnaping Act, therefore, the defendant who abandons the right to contest his guilt before a jury is assured that he cannot be executed; the defendant ingenuous enough to seek a jury acquittal stands forewarned that, if a jury finds him guilty and does not wish to spare his life, he will die. Our problem is to decide whether the Constitution permits the establishment of such a death penalty, applicable only to those defendants who assert the right to contest their guilt before a jury. The inevitable effect of any such provision, is of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial. If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional. . . .

". . . Whatever might be said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. Cf. United States v. Robel, 389 U.S. 258, 88 S. Ct. 419, 19 L.Ed.2d 508; Shelton v. Tucker, 364 U.S. 479, 488–489, 81 S.Ct. 247, 252, 5 L.Ed.2d 231. The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive. . . . Whatever the power of Congress to impose a death penalty for violation of the Federal Kidnaping Act, Congress cannot impose such a penalty in a manner that needlessly penalizes the assertion of a constitutional right. See Griffin v. State of California, 380 U.S. 609, 85 S. Ct. 1229, 14 L.Ed.2d 106."

Paraphrasing the foregoing with respect to the instant case, I believe the following is appropriate: Under amended rule 24.04, a defendant who abandons his right to contest his guilt as to multiple counts is assured that the sentence he receives will not be automatically consecutive but that he will have the benefit of the judge's discretion on that matter; the defendant ingenuous enough to seek a jury acquittal stands forewarned that, if a jury finds him guilty of more than one count, the sentences on those counts will be automatically consecutive and he will not have the benefit of the discretionary order of the trial judge. Our problem is to decide whether the constitutions permit the establishment of such a

practice applicable only to those defendants who assert the right to contest their guilt before a jury on a multiple count indictment. The inevitable effect of any such procedure is, of course, to deter the exercise of the Sixth Amendment right to demand a jury trial. If the effect of the procedure authorized by rule 24.04 in combination with sec. 546.480 had no other purpose or effect than to chill the assertion of the constitutional right to a jury trial by penalizing those who choose to exercise it, then it would be patently unconstitutional. Whatever may be said of this court's objectives in adopting rule 24.04 in view of sec. 546.480, they cannot be pursued by means that needlessly chill the exercise of the basic constitutional right to a jury trial.

Missouri has no more right to threaten a defendant with consecutive terms *if* he demands a jury trial than Congress has to threaten a defendant with possible death *if* he demands a jury trial.

Without amended rule 24.04, the problem of mandatory consecutive sentences in multiple court trials would not exist because, without that rule, multiple count trials could not take place and, therefore, multiple convictions in a single trial could not occur. The combined effect of amended rule 24.04 as construed in the principal opinion and sec. 546.480 is to unconstitutionally chill the right to a jury trial of a defendant who is charged with multiple crimes in the same indictment because it is only when the jury trial is had that the sentences become mandatorily consecutive.

What can a defendant who is charged with multiple crimes in the same indictment do in order to have the benefit of a judge's discretion with respect to mandatory or consecutive sentences? He can waive jury trial and be tried by the court, with the court's assent. Art. I, sec. 22(a), Mo.Const.1945. The court can find the defendant guilty on count one and sentence him. Then the court can find the defendant guilty on count two and sentence

him and enter an order that the sentences are to be served concurrently. Secondly, he can plead guilty to the counts. The court can receive the plea and find him guilty on count one and sentence him, and then do the same thing on count two and sentence him and, in the court's discretion, order the sentences to be concurrent. Thus, it is seen that it is only where the defendant demands a jury trial on multiple count indictments that he is required to give up his right to the exercise of the court's discretion as to how the sentences will be served. It is only when the defendant has a jury trial that the sentences become mandatorily consecutive, and that is an enhancement of punishment as a direct result of amended rule 24.04.

How important is the difference between concurrent and consecutive sentences? In this case, the defendant was sentenced to ten years' imprisonment on count one and ten years' imprisonment on count two. If the terms are to be consecutive, then the total sentence is twenty years, and if concurrent the total is ten years. The difference—ten years in prison—is certainly substantial in itself without even considering the effect of the longer term or the chances of parole. Of course, I do not know whether the trial judge in this case would order consecutive or concurrent terms, but I am convinced that the right to that discretionary ruling is substantive and substantial.

By way of example, in State v. Johnson, *supra,* the defendant was convicted of two counts of robbery in the first degree by a jury which assessed punishment at fifteen years on each count. The trial court ordered the sentences to run concurrently. The difference between consecutive and concurrent terms? Fifteen years in prison. State v. Johnson, *supra,* State v. Henderson, *supra,* State v. Brooks, *supra,* State v. Hudson, *supra,* and innumerable other reported cases, demonstrate that trial judges oftentimes exercise their discretion in favor of concurrent terms. Depending upon the age of the defendant, the differ-

ence in many instances will be life in prison as compared with a term short of life.

It is this right to the discretionary ruling of the trial judge that amended rule 24.04 operates to deprive the defendant of *only* when he exercises his right to a jury trial under the principal opinion in this case. This, in my opinion, unconstitutionally penalizes the defendant for exercising his constitutional right to a trial by jury and is violative of Amend. VI, U.S.Const., and Art. I, sec. 22(a), Mo.Const.1945. United States v. Jackson, *supra*.

For the foregoing reasons, I dissent from that part of the principal opinion which holds that sec. 546.480 is applicable to the sentences in this case. I would remand counts one and two with directions to the trial court to determine whether the sentences are to be served concurrently or consecutively and to enter its order accordingly.