STATE of Missouri, Respondent,

v.

Calvin ROSS, Appellant.

No. 9777.

Missouri Court of Appeals, Springfield District.

April 21, 1975.

Motion for Rehearing or Transfer to Supreme Court Denied May 7, 1975.

Application to Transfer Denied July 14, 1975.

John C. Danforth, Atty. Gen., Clarence Thomas, Asst. Atty. Gen., Jefferson City, for respondent.

James E. Spain, Briney, Welborn & Spain, Bloomfield, for appellant.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

BILLINGS, Chief Judge.

Calvin Ross was convicted by a Mississippi County jury of assault with intent to kill with malice aforethought (§ 559.180, RSMo 1969, V.A.M.S.) and armed robbery (§ 560.135, RSMo 1969, V.A.M.S.). The jury could not agree on the assessment of punishment, and the trial judge sentenced the defendant to a prison term of 25 years on the felonious assault conviction and 30 years on the robbery conviction, the sentences to be served consecutively. In this appeal the defendant contends: (1) his prosecution and conviction for both the assault and robbery violated the rule against double jeopardy since the robbery was the result of the assault; (2) evidence of neutron activation analysis of gunshot residue on his hand was erroneously received; and, (3) the giving of MAI–CR 2.10 without modification was error. We affirm.

The defendant and his cousin, Robert Ross, were initially charged in New Madrid County. The information was in two counts. The first count alleged that, with intent to kill and with malice aforethought, they assaulted Willie Hardin with a loaded revolver and shot him, and the second count charged the two men with the armed robbery of Willie Hardin. Following a change of venue to Mississippi County an amended information was filed again charging the defendant and his cousin in two counts, the assault charge in the first count and the robbery charge in the second. A motion to require the state to elect between the two counts was denied.

The sufficiency of the evidence has not been questioned, but in order to demonstrate the non-applicability of the double jeopardy rule and to consider the defendant's remaining points, we must narrate some of the facts giving rise to the charges and convictions.

Dee Barry owned and operated a grocery store-service station on Highway 61 about six miles north of New Madrid at a place locally referred to as Kewanee Junc-

tion. On December 4, 1973, Mr. Barry had a medical appointment in Cape Girardeau and enlisted the services of 67-year-old Willie Hardin to operate the store during his absence.

Shortly after three o'clock in the afternoon Mr. Hardin heard a car drive into the driveway of the business. The defendant and Robert Ross entered the store, and Robert Ross began striking Mr. Hardin in the face and on the head with a pistol. Before losing consciousness from the blows and as he was lying on the floor, Mr. Hardin heard one of the men saying "hit him again, hit him again" and felt his billfold (containing $130.00 or $140.00) being removed from his pocket. The cash register was rifled of its contents. A canister containing contributions to a charitable organization and a double-barreled shotgun were also taken. Subsequent to the pistol-whipping of Mr. Hardin and removal of his billfold and while he was unconscious, Mr. Hardin was shot in the face by a pistol, resulting in the loss of an eye.

The defendant and Robert Ross emerged from the store and got into an automobile driven by Charles Williams. The car sped out of the driveway but was wrecked a short time later near the intersection of the road from Kewanee and Interstate Highway 55. Several hours later another car in which the defendant and Robert Ross were passengers was stopped by police officers and the two men were taken into custody. Two pistols were found in the car in the immediate area of where the defendant and Robert Ross had been sitting. The driver of the vehicle was unaware of the presence of the weapons.

In essence, Count 1 of the amended information alleged that Calvin Ross and Robert Ross on December 4, 1973, in New Madrid County, feloniously, and of malice aforethought, made an assault upon Willie Hardin with a pistol with intent to kill Willie Hardin and shot him. Count 2 charged that the cousins feloniously and by means of a loaded pistol, robbed Hardin of $230.00 by force and violence to his person.

At the close of all of the evidence the defendant re-filed his motion to compel the state to elect between the two counts, but it again was overruled and in separate verdict directing instructions both the assault and robbery charges were submitted to the jury.

In support of his double jeopardy claim the defendant relies upon the decisions of our Supreme Court in State v. Neal, 514 S.W.2d 544 (Mo. banc 1974), and State v. Richardson, 460 S.W.2d 537 (Mo. banc 1970).

In State v. Neal the defendant and two others entered a store. The owner of the store was struck over the head with a pistol. A clerk was shot and forced to open the cash register and turn over money to the robbers. The robbers then left without doing anything else. The defendant was charged in three counts of an information. He was charged with the robbery of the clerk, assaulting the owner, and assaulting the clerk. The defendant was convicted on all three counts and consecutive sentences were imposed. The court held that since the robbery by taking money from the custody of the clerk was the result of the assault committed upon the clerk charged in a separate count, the separate assault of the clerk conviction could not stand. "To thus split the single crime of robbery and prosecute it in Count I and a second time in Count III as an assault violated the rule against double jeopardy." 514 S.W.2d at 548. The court affirmed the robbery conviction, and further held that the assault of the owner was a separate crime and that submission and conviction of the defendant for that crime, along with the conviction for the robbery of the clerk, did not place the defendant in double jeopardy.

In State v. Richardson the defendant had been convicted of attempted robbery of a store clerk by placing a butcher

knife in the clerk's stomach and demanding money. A year later he was charged and convicted of assaulting the clerk with a knife. In reversing the second conviction the court said: "The applicable general rule, with which we agree, as stated in 22 C.J.S. Criminal Law § 287 at p. 752, is that 'If there is but a single act of force proved as an essential element of the crime of robbery, then such act of force cannot be availed of as constituting the separate crime of assault, but the rule is otherwise where the existence of the distinct elements as realities is established, as where the force relied on to establish assault occurred after the robbery has been accomplished.'" 460 S.W.2d at 540.

The Richardson opinion contains cases in which the general rule has been applied and cases in which the aforementioned exception was held applicable. One of the latter cases is that of Ex parte Chapman, 43 Cal.2d 385, 273 P.2d 817 (1954). There the defendant's initial assault during the course of a robbery consisted of threatening the victim with a gun. After the robbery the victim attempted to flee the scene, and the defendant slugged him with the pistol. The California Court, in holding the double jeopardy rule did not apply, found that the robbery was accomplished through putting the victim in fear of force (first assault), that the slugging of the victim thereafter (second assault) constituted the basis of the assault conviction and that both convictions could stand.

■ In this case the defendant and his companion first assaulted Mr. Hardin by pistol-whipping him to the floor, and as a result of this initial act of force took his billfold and accomplished the crime of robbery. It was at a subsequent time, and after the completion of the robbery of Mr. Hardin, that a separate and distinct assault of Mr. Hardin took place—the shooting of him as he lay unconscious on the floor. The pistol-whipping assault resulted in the robbery of Mr. Hardin. The shooting of the elderly clerk thereafter constituted the basis for the defendant's felonious assault conviction; and we hold the rule of double jeopardy is not applicable and there was no error in submitting both Count 1 and Count 2.[1]

■ The defendant assigns error in the giving of MAI–CR 2.10 (Parties: General Responsibility for the Conduct of Others) because this instruction made no reference to the separate counts. However, following this instruction the court gave MAI–CR 2.70 (. . . Multiple Counts Requiring Separate Verdicts), and since all instructions must be read as a whole and construed together (State v. Cobb, 484 S.W.2d 196 (Mo. banc 1972)) we find no merit in this point.

The defendant assigns error in the admission in evidence of the results of a gun residue test arrived at by neutron activation analysis. He contends there was an insufficient foundation demonstrating the acceptability and reliability of the neutron activation analysis as to gun residue and, consequently, testimony as to findings and an opinion resulting therefrom were improperly received.

Following the defendant's apprehension his hands were swabbed with cotton swabs to which a liquid solution [five percent nitric acid] had been applied. The swabs were sealed in containers and forwarded to the nuclear reactor at the University of Missouri—Columbia for neutron activation analysis.

At trial, over the defendant's objection, the state was permitted to introduce the results of the neutron activation analysis of

1. See State v. Parsons, 513 S.W.2d 430 (Mo. 1974) (detonation of one bomb killed defendant's wife, and state could not divide charges into murder and bombing) ; and State v. Chernick, 278 S.W.2d 741 (Mo.1955) (assault made during robbery against person not victim of robbery and not for purpose of compelling victim to part with money, two separate crimes committed).

the swabs used on the defendant's hands. Dr. Steve Morris, senior research chemist for the University of Missouri—Columbia, testified the chemical analysis of the defendant's right hand, based upon the samples taken, showed appreciable amounts of barium and antimony.[2] This, according to the scientist, was "indicative of [defendant] having recently handled and discharged a firearm."

Neutron activation analysis has gained considerable recognition as applicable to a variety of testing procedures.[3] It is a scientific technique developed in nuclear research and involves the detection of minute quantities of chemical elements, oft referred to as trace elements, in the sample material. A simplified version of the procedure involved is that the sample is placed in a nuclear reactor and subjected to atomic radiation in the form of neutron bombardment. This latter process causes the trace elements in the sample to become radioactive through induced radiation. The radioactive trace elements emit radiation in the form of gamma rays which can be electronically detected, analyzed and recorded.[4]

In lodging his objection to the testimony of Dr. Morris, the defendant relied upon State v. Stout, 478 S.W.2d 368 (Mo. 1972), wherein our Supreme Court ruled that the *particular technique* utilized in the neutron activation analysis of *blood* samples had not yet gained general acceptance in the particular field in which it belongs. The defendant urges the rule in *Stout* should equally apply in firearm residue

testing by neutron activation analysis and seeks to distinguish State v. Stevens, 467 S.W.2d 10 (Mo.1971), where neutron activation analysis of hair samples was approved.

We are of the view and hold that firearm residue testing by neutron activation analysis has crossed the line between the experimental and demonstrable stages and the evidential force of the principle must be recognized.[5] The Minnesota Supreme Court, in so ruling in State v. Spencer, 216 N.W.2d 131 (Minn.1974), said at 134–35: "The reliability of neutron activation analysis in identifying the chemical composition of evidentiary materials was recognized by the United States Court of Appeals for the Sixth Circuit in United States v. Stifel, 433 F.2d 431 (6 Cir. 1970), certiorari denied, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971). . . .

"Some 76 cases are listed in 15 Am.Jur., Proof of Facts (1973 Supp. p. 22) in which the results of neutron activation analysis were admitted in evidence . . . .

"While there seems to be little doubt that neutron activation analysis can accurately detect the presence and amount of certain chemical elements, it is doubtful that it can *conclusively* establish that those elements were present as the result of firing a weapon. . . .

"However, the presence of these chemicals together in the amounts found on this defendant's hands could reasonably provide some evidence that defendant had fired a

2. Both barium and antimony are used in primer compositions for ammunition.

3. See United States v. Stifel, 433 F.2d 431 (6th Cir. 1970), *cert. denied*, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971); State v. Coolidge, 109 N.H. 403, 260 A.2d 547 (1969), *rev'd on other grounds*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); 15 Am.Jur. Proof of Facts p. 115 (1964), p. 19 (1974 Supp.); F. Bailey & H. Rothblatt, Investigation and Preparation of Criminal Cases, (Supp.1975, 125–45); Comment, Identification of Evidence by Neutron Activation Analy-

sis; 37 Mo.L.Rev. 295 (1972); Annot., 50 A.L.R.3d 117 (1973).

4. For a more definitive, detailed and scientific description of neutron activation analysis, the attention of the curious is directed to the articles found in 15 Am.Jur., Proof of Facts, p. 115; Comment, Identification of Evidence by Neutron Activation Analysis, supra; and, F. Bailey & H. Rothblatt, supra.

5. The text authorities shown in note 4 describe extensive studies of neutron activation analysis of gun residue and consider it a "highly reliable technique."

gun. We hold the trial judge did not err in admitting the test results in evidence.

. . .

. . . . . .

"We believe that neutron activation analysis is a useful law-enforcement technique and that the increasing use of technology in criminal investigations should not be inhibited but encouraged where consistent with the rights of the accused. . . . ."

In reaching a similar result the court in People v. Pieropan, 72 Misc.2d 770, 340 N.Y.S.2d 31 (1973) said: "A new technique called 'neutron activation analysis' has been developed which has been defined as 'a method of elemental analysis based upon the production of radioisotopes in the sample to be analyzed, by nuclear reactions induced by neutron bombardment, followed by the identification and quantitative measurement of the different radioisotopes formed.' See, Vincent P. Guinn, Nonbiological Applications of Neutron Activation Analysis in Forensic Studies, in Methods of Forensic Science, Volume 3 (1964) Interscience Publishers, England.

"This analysis is now being widely used to determine gunpowder residues, bullet residues, the composition of metals, alloys, drugs, soils, fibers, plastic tapes, concrete, rubber, ink, paper, paint and other materials.

. . . . . .

"While we have been able to find no New York case which specifically has passed upon the admissibility of such evidence, there seems to be evidence that it has been accepted by the federal courts as meeting the tests of reliability and admissibility. United States v. Stifel, Dist.Ct., N.D.Ohio (April 1969) affirmed 433 F.2d 431 (6th Circuit). Certiorari denied. March 29, 1971, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 531 (bomb debris); Missouri v. Stevens, November 1, 1969 (Cir.Ct., St. Lewis [sic] County, Missouri) affirmed (1971) 467 S.W.2d 10. Certiorari denied 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546 (hair and thread samples); State v. Coolidge, May 1965 (Super.Ct. New Hampshire). Affirmed (1969) 109 N.H. 403, 260 A.2d 547. Reversed on other grounds 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 2022[564], rehearing denied, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 1120[120] (organic and inorganic particles)

. . . . ." [6]

The amended information is sufficient and the verdicts responsive to the issues tried and submitted. The punishments assessed are within the statutory range. Allocution was granted and the judgment and sentences on each count lawfully imposed.

Judgment affirmed.

All concur.

6. Also see State v. Kassow, 28 Ohio St.2d 141, 277 N.E.2d 435 (1971), modified, 408 U.S. 939, 92 S.Ct. 2876, 33 L.Ed.2d 762 (1972); United States v. Kelly, 420 F.2d 26 (2d Cir. 1969). Cf. State v. Holt, 17 Ohio St.2d 81, 246 N.E.2d 365 (1969).