STATE of Missouri, Respondent,

v.

Robert ROSS, Appellant.

No. 9759.

Missouri Court of Appeals, Springfield District.

Nov. 7, 1975.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 4, 1975.

Application to Transfer Denied Jan. 12, 1976.

John C. Danforth, Atty. Gen., Robert H. House, Asst. Atty. Gen., Jefferson City, for respondent.

Harry H. Bock, New Madrid, for appellant.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

BILLINGS, Chief Judge.

Defendant Robert Ross seeks reversal of his convictions for assault with intent to kill with malice aforethought [§ 559.180, RSMo 1969] and armed robbery [§ 560.135, RSMo 1969]. He contends his multiple convictions subject him to double jeopardy, an opinion as to gunshot residue on his hands based on neutron activation analysis was erroneously received in evidence, and the jury selection procedures of Mississippi County are "invidiously discriminatory" against members of his race [Negro]. We affirm.

Defendant and his cousin Calvin Ross were jointly charged in New Madrid County in a two count information. They were accused of feloniously assaulting Willie Hardin with intent to kill and with malice aforethought by shooting him and of the armed robbery of Mr. Hardin. Venue of the cause was transferred to Mississippi County where defendant's motion for severance was sustained and separate trials followed.[1]

With minor exceptions not here relevant the facts and circumstances giving rise to the charges against and resultant convictions of the defendant in this case are identical to those detailed in *State v. Calvin Ross*, 523 S.W.2d 841 (Mo.App.1975), and will not be repeated here. In summary, the defendant and Calvin Ross were identified as the two men who first pistol-whipped and robbed Mr. Hardin and thereafter shot

---

1. The jury could not agree on the defendant's punishment and the trial judge imposed consecutive prison terms of 25 years and 30 years. Calvin Ross was convicted on both counts in his trial and received identical sentences. Judgment in *State v. Calvin Ross* was affirmed by this court, 523 S.W.2d 841 (Mo.App.1975). An accomplice's conviction was affirmed in *State v. Williams*, 523 S.W.2d 846 (Mo.App.1975).

and seriously wounded him before departing the store he was tending.[2]

■ In rejecting the identical double jeopardy claim of Calvin Ross we said: "In this case the defendant and his companion [Robert Ross] first assaulted Mr. Hardin by pistol-whipping him to the floor, and as a result of this initial act of force took his billfold and accomplished the crime of robbery. It was at a subsequent time, and after the completion of the robbery of Mr. Hardin, that a separate and distinct assault of Mr. Hardin took place—the shooting of him as he lay unconscious on the floor. The pistol-whipping assault resulted in the robbery of Mr. Hardin. The shooting of the elderly clerk thereafter constituted the basis for the defendant's felonious assault conviction; and we hold the rule of double jeopardy is not applicable and there was no error in submitting both Count 1 and Count 2." *State v. Ross, supra* at 844.

For the reasons set forth and authorities cited in *State v. Calvin Ross,* defendant Robert Ross' claim of double jeopardy is rejected and denied.

■ Likewise in *State v. Calvin Ross* we had occasion to explore and consider the use of neutron activation analysis to test for gunshot residue and held an expert's opinion based thereon was properly received in evidence. In so ruling we concluded the evidential force of this scientific technique had crossed the line between the experimental and demonstrable states and consequently, the principle is entitled to judicial recognition. 523 S.W.2d at 844–46. Defendant's point is denied.

■ This leaves for determination defendant's contention that the lower court erred in overruling his pretrial motion to quash the jury panel. As previously noted herein the defendant's motion alleged systematic and invidious discrimination against members of his race in the selection of panel members.

At the hearing of defendant's motion he claimed the 1970 census for Mississippi County showed a 21.6 per cent non-white population; and for eight years prior to his trial there had never been more than "three --- possibly four" Negroes on the twenty-four member jury panels. Defendant offered no evidence of the percentage of Negroes eligible or qualified for jury duty [ §§ 494.010, 494.020, RSMo 1969] or the percentage of Negroes on the list of registered voters from which the jury list is drawn. Defendant further failed to show the *average* number of Negroes chosen for jury panels during the eight year period.

In support of his motion defendant examined Circuit Clerk Ellis W. Howlett who by § 494.230, RSMo 1969, serves as ex officio clerk of the board of jury commissioners.[3] The testimony of Clerk Howlett, at time of trial observing his fortieth year as circuit clerk, clearly refuted defendant's contention. The jury lists were drawn pursuant to § 494.240, RSMo 1969, from names taken from voter registration lists, and the names so selected did not indicate race. Negroes are and have been included in the list of prospective panel members and are frequently selected as members of a jury panel. Negroes have served on trial juries in Mississippi County.

■ The burden of demonstrating sufficient facts to prove a prima facie case of racial discrimination in jury selection is on the defendant. *Whitus v. Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); *United States v. Jones,* 452 F.2d 884 (8th Cir. 1971); *State v. Mooring,* 445 S.W.2d 303 (Mo.1969). It is not the duty of the court to compile statistics pertaining to the percentage of Negroes eligible and quali-

---

2. Before leaving the scene in a car driven by an accomplice, Robert Ross boarded a school bus for retarded children which had stopped at the store and shot and wounded the bus driver. Several children were present in the bus when the driver was shot.

3. The judges of the county court and the circuit judge, together with the circuit clerk, constitute the board of jury commissioners in class three and four counties.

fied for jury service or other matters involving alleged discriminatory practices. *State v. Aikens,* 507 S.W.2d 386 (Mo.1974).

In *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the evidence was that while Negro males over 21 years of age constituted 26 per cent of the male population of Talladega County, Alabama, only 10 to 15 percent of the grand and petit jury panels for a number of years had been Negroes. In holding this alone was not sufficient to establish a prima facie case of invidious discrimination the court said:

"Venires drawn from the jury box . . unquestionably contained a smaller proportion of the Negro community than of the white community. But a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which the petit jurors are drawn. . . . Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. . . . We cannot say that purposeful discrimination based on race alone is satisfactorily proved by showing that an identifiable group in a community is underrepresented by as much as 10%. . . . Undoubtedly the selection of prospective jurors was somewhat haphazard and little effort was made to ensure that all groups in the community were fully represented. But an imperfect system is not equivalent to purposeful discrimination based on race. . . ." 380 U.S. at 208–09, 85 S.Ct. at 829.

Defendant's reliance on *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), is misplaced. In that case questionnaires which clearly indicated race were used in selecting prospective grand jurors. Although 13.76 per cent of the questionnaires were from Negroes, only 6.75 percent of those chosen as prospective grand jurors were Negro. In reversing Alexander's conviction, the court stated: "[W]e do not rest our conclusion that petitioner has demonstrated a prima facie case of invidious racial discrimination on statistical improbability alone, for the selection procedures themselves were not racially neutral. The racial designation on . . . the questionnaire . . . provided a clear and easy opportunity for racial discrimination." 405 U.S. at 630, 92 S.Ct. at 1225.[4]

In the present case defendant has presented no evidence of the use of materials designating race or of any other procedure which is not racially neutral. His point is without merit.

The judgment is affirmed.

All concur.

---

4. Each of the other three cases cited by appellant also involved situations where materials used in the selection process indicated the race of prospective jurors. *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) (racially segregated tax digests); *Whitus v. Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967) (racially segregated tax digests); *Arnold v. North Carolina,* 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77 (1964) (racially segregated tax records).