**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Arthur BUFORD, Defendant-Appellant.**

**No. KCD 29658.**

Missouri Court of Appeals,
Western District.

April 30, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 11, 1979.

Application to Transfer Denied
July 17, 1979.

Larry O. Denny, Kansas City, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Majorie Wholey Haines, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

DIXON, Judge.

This is a direct criminal appeal from convictions of first degree robbery, assault with intent to kill with malice, and assault with intent to kill without malice. Defendant was sentenced to terms of twenty years, ninety-nine years, and five years for the respective counts, with the sentences to be served concurrently. The convictions were had on a five-count indictment; the jury acquitted the defendant on two counts.

■ Several complex issues concerning the trial proceedings must be examined, but before turning to these issues, the defendant's claim that his motion to quash the jury panel was improperly overruled must be considered. The defendant timely filed a motion to quash the jury panel on the theory that the jury selection procedures in Jackson County resulted in a jury panel which denied the defendant a fair cross section of the community. Defendant's claim is that the questionnaire utilized in Jackson County under § 497.130 RSMo 1969 results in a disproportionate number of women being available for jury service. This motion was originally supported by a stipulation showing the composition of the jury wheel in Jackson County for the year 1976. Prior to the court's ruling on the motion, the defendant's counsel provided evidence by additional exhibits that the 1977 jury wheel was composed in the same fashion as the 1976 jury wheel. This was

offered as a supplement to the original stipulation and was explicitly acceded to by the State.

The State in its brief and in the oral argument of this case takes the position that the stipulation and the attached exhibits do not afford a basis for the application of the rules announced in *Duren v. Missouri*, —— U.S. ——, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), and *Lee v. Missouri*, —— U.S. ——, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979).

The thrust of the State's contention is that the stipulation in the instant case showed only the manner of selection of the jury wheel and not the ultimate composition of the wheel. The letter exhibit shows that the number of persons disqualified by response to the questionnaire in 1977 was 38,796 out of a total of 73,336 questionnaires mailed. In 1976, 65,207 questionnaires were mailed, and 37,339 were returned with responses showing the prospective jurors were not eligible or elected not to serve. Of that latter number, the 1976 stipulation reveals that 21,884 females declined to serve for no apparent reason other than the election to be excused on the basis of gender. The stipulation for 1976 also shows the numbers of those females disqualified because of age, prior jury service, disability, and occupation as teachers. In the 1977 jury wheel chosen by the same process, it is likely that approximately the same number of females declined to serve in 1977 solely by reason of the statutory right to decline jury service; there is no basis to suppose otherwise. To assume otherwise would require this court to presume that over one-half of the persons chosen at random were disqualified for reasons other than election not to serve by gender. It would also require an assumption that the process identical to the 1976 process did not operate to provide a jury wheel of approximately the same proportions as that which the Supreme Court declared improper in *Duren*. *Duren*, in the following language, precisely defines the systematic underrepresentation of women in the Jackson County wheel [99 S.Ct. at 669]:

"[The] undisputed demonstration that a large discrepancy occurred not just occasionally but in every weekly venire for a period of nearly a year manifestly indicates that the cause of the underrepresentation was systematic—that is, inherent in the particular jury-selection process utilized."

The proof is sufficient to show that the selection of juries under the provisions of § 497.130 RSMo 1969, as it impacts upon the option of females to serve as jurors, results in a constitutionally impermissible jury wheel under the holdings in *Duren v. Missouri*, —— U.S. ——, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), and *Lee v. Missouri*, —— U.S. ——, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979).

Both the State and the defendant urge that this court consider several of the other issues since they are likely to recur on remand. These issues can be summarized as (1) a claim of constitutional error in failing to grant severance under Rule 24.04; (2) a claim of improper joinder of the alleged offenses under Rule 24.04; (3) a claim that the first degree robbery charge and the charge of assault with intent to kill with malice subjected defendant to multiple convictions and defenses in violation of his right to be free of double jeopardy; and (4) a claim of error in overruling the motion to suppress the identification of the defendant by witness Margaret Mathews.

The facts are critical both to the issues of joinder and to the claim that two of the charges are duplicitous. On June 8, 1976, at approximately 10 a. m., the defendant came to the residence of Alice Faye Jackson and Albert Hughes at 4308 Garfield. After knocking on the door, defendant told Miss Jackson that he was coming in and then kicked the door open. On entering the residence, the defendant told Miss Jackson to get Albert Hughes' gun. When he had received the gun, defendant told Miss Jackson to follow him.

Accompanied by a second black male, the two went to the home of Margaret Mathews across the street. After knocking, then kicking the door in, the evidence shows that

defendant entered Margaret Mathews' bedroom, waking her from a deep sleep. He asked where the keys to her car were and was told that they were in her purse. On receiving this response, defendant fired three times at Margaret Mathews, then went into another room. The room was described by Margaret Mathews as her sewing room and was not the dining room where her purse was later found. Mathews attempted to call an ambulance, but was interrupted by the defendant returning to her room where he pulled the telephone out of the wall, shot her toy poodle, and then shot Margaret Mathews twice more. The police discovered six shell casings on the dining room table and Margaret Mathews' car keys were gone from her purse. After the defendant left, ostensibly in the Mathews' car, she was able to summon a neighbor for help.

A short time after the events on Garfield, the defendant entered another residence at 6103 Walrond by kicking in the door. At this residence, the defendant had an altercation with one Ronald Meade in which both defendant and Meade were wounded. Defendant was arrested at approximately 11 a. m. that morning at a home a short distance from 6103 Walrond. Margaret Mathews' car was recovered in front of Ronald Meade's house; the car keys were not found. A revolver and spent casings found in defendant's possession at the time of the arrest were shown to match ballistically the spent bullets and cartridge cases found in Margaret Mathews' home.

A line-up was conducted on June 8, 1976, and the defendant was identified by several witnesses; this line-up was conducted prior to any formal charge against the defendant. Because of the critical nature of her injuries, Margaret Mathews did not attend the line-up. In February of 1977, some months later, in the office of the prosecutor, Mathews was shown a number of photographs that had been taken at the June 8th line-up. From those photos, Margaret Mathews identified the defendant, Arthur Buford, as her assailant. This photographic identification was admitted into evidence during the trial of the defendant.

As previously noted, the defendant was originally charged with five offenses, in five counts, only three of which are relevant in this appeal because the jury acquitted defendant on two counts. The remaining counts which raise the issues to be resolved are as follows: Count II, charging Buford with first degree robbery in connection with the forceful taking of Margaret Mathews' car keys; Count III, charging the defendant with assault with intent to kill with malice, in connection with the shooting of Margaret Mathews; and Count IV charging assault with intent to kill without malice arising from the shooting of Ronald Meade.

■ Defendant argues under the first issue raised that joinder of Counts II, III, and IV was improper because Rule 24.04 is unconstitutional under Article V, § 5 of the Missouri constitution because the rule affects substantive rights. This issue has been both extensively discussed and positively resolved against the position of the defendant.

*State v. Baker*, 524 S.W.2d 122 (Mo. banc 1975), announced the rule that a "defendant does not have either a federal or state constitutional right to be tried on only one offense at a time." *supra* at 126. *Baker* further held that Rule 24.04 is a procedural rule which does not change substantive rights. *supra* at 127. That holding has been reiterated in numerous cases from this court and others in the State. *See State v. Duren*, 556 S.W.2d 11, 19–20 (Mo. banc 1977), *rev'd* on other grounds, —— U.S. ——, 99 S.Ct. 664, 58 L.Ed.2d 579; *State v. Perkins*, 555 S.W.2d 693 (Mo.App.1977); *Woods v. State*, 546 S.W.2d 14 (Mo.App. 1977).

The second issue raised under Rule 24.04 —that of the joinder of the robbery and assault counts involving Margaret Mathews, Counts II and III, with the assault charge involving Ronald Meade—Count IV, is a difficult and complex issue. Rule 24.04 in relevant portion reads as follows:

"(b) With the exception stated in (a) hereof, all offenses which are based on

the same act or on two or more acts which are a part of the same transaction or on two or more acts or transactions which constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts, or in the same count where authorized by statute. Any indictment or information may contain counts for the different degrees of the same offense or for any one of such degrees."

*State v. Prier*, 561 S.W.2d 437 (Mo.App. 1978), discusses Rule 24.04(b) in some detail. Judge Flanigan, in his careful analysis of precisely the same issue in that case, points out that the "common scheme or plan" or "same transaction" language of the rule has been dealt with extensively in the law of evidence. Utilizing the analogy of the evidentiary rulings with respect to proof of other offenses, the joinder in *Prier* was held erroneous. As *Prier* indicates, this joinder rule parallels and, to some extent, embodies the evidentiary rule that "proof of the commission of separate and distinct crimes by the defendant is not admissible, unless such proof has a legitimate tendency to establish defendant's guilt of the charge for which he is on trial." *State v. Selle*, 367 S.W.2d 522, 529 (Mo.1963).

■ To be properly joined, the offenses *must* be part of the same transaction or part of a common scheme or plan, because to join offenses otherwise would expose the defendant to prejudice by allowing proof of the commission of unrelated crimes. Thus, to avoid the emasculation of the evidentiary rule, the joinder rule must be construed so that joinder is permitted only when proof or evidence of the commission of one crime must be necessary to the proof of the commission of the other crime. *State v. Prier, supra* at 441–42, and *State v. Jackson*, 566 S.W.2d 227, 229 (Mo.App.1978).

■ The defendant's claim here is that the joinder of the offenses involved in the Margaret Mathews assault and robbery on Garfield with the assault on Ronald Meade twenty blocks away on Walrond was error.

Attorneys for the State argue that the evidence and testimony showing the short span of time between the two sets of offenses, the fact of the stolen automobile being found at the place of the second assault, and the physical evidence of the gun and the spent casings found in defendant's possession, which were linked to the first assault, demonstrate the necessity for joining the offenses. The State relies heavily on the holding of the case of *State v. Johnson*, 505 S.W.2d 11 (Mo.App.1974), that, "These offenses are so closely intertwined in time and purpose that they were part of the same transaction and were properly joined." *supra* at 12. In that case, an automobile was stolen and a short time later the defendant jumped out of the car, held up a couple, and used the car for his escape. The court held that the offenses were properly joined as part of the same transaction.

While superficially similar in some respects because of the use of the stolen auto, *Johnson* is not controlling. In *Johnson*, the defendant was apprehended because of his presence in the stolen auto. The proof of either offense in *Johnson* would have inevitably shown the commission of the additional offense.

The events that occurred on Garfield— the robbery of and assault on Margaret Mathews—were complete at the time the defendant left Margaret Mathews' house with the car keys in hand. The facts that the car was found at the address of the assault on Ronald Meade and that the gun and cartridges matching those used on Margaret Mathews were found after the second assault are admissible *evidence* in the trial of the early events. However, the *fact* of the second assault which occurs if joinder is allowed, is not *necessary* to the proof of the early assault, nor is it so inextricably woven with the proof of the earlier assault that it would be shown in the necessary proof of the first assault. Obvious prejudice occurs by the joinder of the two assaults which, though close in time, were not shown to be motivated by a common scheme or plan, and could not be described as part of the same transaction.

The trial court abused its discretion in this case by failing to sever the offenses against Margaret Mathews from the offense against Ronald Meade. Although severance is not mandated in Missouri as it is in the federal jurisdictions by a rule such as F.R.Cr.P. 14, the Missouri courts have "evinced a willingness to consider the question of whether a trial court has abused its discretion in denying a request for separate trials . . . ." *State v. Prier, supra* at 439 n. 4, and cases cited therein. Counts II and III should, therefore, be severed from Count IV on retrial of these offenses.

Defendant contends that the charges of first degree robbery and assault with intent to kill with malice subjected him to multiple convictions and punishment for the same offense in violation of his fifth amendment right to be free of double jeopardy. Basically, his contention is that the shooting of Margaret Mathews was a single act of force that was an essential element of the robbery and not a separate offense of assault.

Similar claims have been made in other Missouri cases, and the decisions have varied according to the factual underpinnings of each case. *State v. Richardson*, 460 S.W.2d 537 (Mo. banc 1970), citing 22 C.J.S. Criminal Law § 287, states the rule:

> " 'If there is but a single act of force proved as an essential element of the crime of robbery, then such act of force cannot be availed of as constituting the separate crime of assault, but the rule is otherwise where the existence of the distinct elements as realities is established, as where the force relied on to establish assault occurred after the robbery has been accomplished.' " *supra* at 540.

The general rule has been applied in other recent cases. *State v. Ross*, 523 S.W.2d 841, 843–44 (Mo.App.1975); *State v. Neal*, 514 S.W.2d 544, 548 (Mo. banc 1974).

In *Neal*, the court held that where the taking of money from the victim was the result of the assault, the defendant was improperly charged with both robbery and assault. Citing *Richardson, supra*, the court held that "To thus split the single crime of robbery and prosecute it in Count I and a second time in Count II as an assault violated the rule against double jeopardy." *Neal, supra* at 548.

The rule in *Neal* was clarified in *State v. Collett*, 526 S.W.2d 920 (Mo.App.1975). In *Collett*, the court distinguished the factual situation in *Neal*, which involved an assault preceding or coterminous with a robbery, from the factual situation where a separate assault occurs *after* the robbery. See also *State v. Brooks*, 551 S.W.2d 634, 646, n. 19 (Mo.App.1977).

Thus, the issue here is whether a single act of force was present or whether, under the rule in *Richardson* and *Collett*, separate acts of force took place which would justify the separate charges of assault and robbery. The act of robbery would have to have been complete at the time of the second shooting in order for the separate charges to have been proper under the ruling of *Collett*.[1]

Margaret Mathews' testimony is the key to deciding this issue. According to her version of the events, the defendant broke into her house, then asked her where her keys were. She told him they were in her purse, at which point he then shot her three times. The defendant then left her room and went into the sewing room; at that point Margaret Mathews lost sight of him. She testified that the defendant was gone a short time, perhaps "A minute or two." He reentered her bedroom and seeing her attempting to phone for help, he shot her dog

1. The instant case is unlike the line of cases cited in *State v. Powell*, 581 S.W.2d 586, 587 (Mo.App.1979). In *Powell* and the cited cases, the general rule that "each offense necessitates proof of an essential fact or element not required by the other," was applied to find a proper charging of separate offenses. In the instant case, the essential element that appears is that of violence; first degree robbery under § 560.120 RSMo 1969 uses the language of "by violence to his person." Assault with intent to kill, under § 559.180 RSMo 1969, speaks of "shoot[ing] or stab[bing] another . . . or by any other means or force." For a comparison of the two lines of cases, see *State v. Chambers*, 524 S.W.2d 826, 830–31 (Mo. banc 1975).

and then two more shots at her. There is nothing in the record that indicates that the defendant had the keys in his possession when he reentered Margaret Mathews' room and fired the second set of shots.

In fact, the evidence indicates that keys may not have been taken until after the shootings. Margaret Mathews identified a picture of her dining room table that showed her purse and *six* bullet casings. Six casings coincides with the number of shots fired in the Mathews' home, indicating that the defendant emptied the cylinder of his gun after the shootings. Margaret Mathews testified that she heard voices in the house for a time after the second shooting, indicating that the defendant remained in the house for some time. This evidence would indicate that the defendant may very well have taken the keys and emptied his gun *after* the shootings. It cannot be said with any certainty that the robbery was complete before the second shooting. Factually, this case, then, would be closer to *Neal* than it would be to *Collett*. On this record, it appears that the State should have elected between the two offenses.

The fourth issue that this court must deal with is defendant's claim that the trial court erred in overruling the motion to suppress the identification of defendant by the witness, Margaret Mathews. In this claim, the defendant really raises two issues which will be treated separately.

■ Defendant's primary claim · is that defendant was denied effective assistance of counsel because his attorney was not present at the post-indictment showing of the line-up photograph to Margaret Mathews. *U. S. v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), is cited to support this proposition. *Wade* held that a post-indictment line-up was a "critical stage" of the trial process and that the accused was entitled to the aid of counsel at the line-up.

However, the instant case does not really fall within the ambit of *Wade*, because this case involves the situation of a witness viewing a photograph of a *pre-indictment* line-up. This situation is clearly covered by

*U. S. v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), in which it was held that "the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender." *supra* at 321, 93 S.Ct. at 2579. The defendant would distinguish *Ash* on the basis that *Ash* involved individual photographs rather than a line-up, but that attempted distinction is not compelling.

Missouri cases on this point dictate the same result as the federal cases. *State v. Lynch*, 528 S.W.2d 454, 460–61 (Mo.App. 1975), holds in concord with *Ash* that there is no requirement for counsel at photographic line-ups. See also *State v. Jenkins*, 516 S.W.2d 522 (Mo.App.1974).

Further support is found in the federal cases and in the cases of other jurisdictions. *U. S. v. Brown*, 149 U.S.App.D.C. 43, 461 F.2d 134 (1972), a case that preceded *Ash*, found no need under *Wade* for the presence of counsel. *supra* 149 U.S.App.D.C. at 50, 461 F.2d at 141. A similar result was reached in *People v. Lawrence*, 4 Cal.3d 273, 93 Cal.Rptr. 204, 481 P.2d 212 (1971) where the photographic showing of a line-up was upheld. *supra*, 93 Cal.Rptr. at 207, 481 P.2d at 215.

■ Defendant makes another claim—that the line-up was unnecessarily suggestive because the defendant was the only person in the line-up with a distinctive type of clothing. That claim was made in the trial court at the motion to suppress hearing, and later, in the cross-examination of Margaret Mathews, she was closely questioned about her identification. On both occasions, Mathews testified that she identified the defendant not only from his clothing, but from his facial features and overall appearance. The testimony was clear that Margaret Mathews had ample opportunity to view the defendant at close range in a bright, sunlit room. There is no evidence to suggest that the line-up procedure was unduly suggestive or that Margaret Mathews did not have an independent basis for her identification.

Missouri follows the "totality of the circumstances" test in evaluating pre-trial identification procedures. *State v. Parker*, 458 S.W.2d 241 (Mo.1970). Subsequent cases have held that isolated facts such as a distinctive height or lack of facial hair are not sufficient to declare a line-up impermissibly suggestive. See *State v. Tidwell*, 500 S.W.2d 329 (Mo.App.1973); *State v. Macon*, 547 S.W.2d 507 (Mo.App.1977).

Closer to the facts of this case, various Missouri cases have held on similar facts that distinctive clothing alone does not indicate impermissible suggestiveness. *State v. Arnold*, 528 S.W.2d 164 (Mo.App.1975), and *State v. Carter*, 572 S.W.2d 430 (Mo. banc 1978). There is nothing in this record that would distinguish this case from those cited or would support defendant's claim of trial court error in failing to suppress the identification.

■ The defendant also raises the issue of the sufficiency of the evidence to support the conviction for robbery on a theory that there is no direct evidence defendant took the keys. The fact defendant asked for the keys, that they were missing, that the car was moved, and that the defendant's fingerprints were found in the car clearly made the issue submissible. Other points of trial error raised are not likely to recur. For the errors noted, the judgments and convictions are set aside and the cause remanded for a new trial.

All concur.