STATE of Missouri, Respondent,

v.

Leonard A. DONAHUE, Appellant.

No. 30315.

Missouri Court of Appeals,
Western District.

June 29, 1979.

Clifford A. Cohen, Public Defender, Gary L. Gardner and Kevin R. Locke, Asst. Public Defenders, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

PRITCHARD, Judge.

Appellant was convicted by the verdict of a jury of the commission of the crime of robbery in the first degree. The trial began on June 7, 1978. Upon a finding that appellant was a second offender, the court sentenced him to ten years imprisonment in the Division of Corrections.

The sufficiency of the evidence is not questioned. It suffices to say that appellant by use of a handgun robbed the victim, Eula Johnson, of her 1977 Thunderbird automobile.

At the outset of the trial, appellant moved to quash the jury panel upon the grounds that Missouri's exemption from jury service granted to women upon their exercise of the option not to serve was unconstitutional because it denied his right to have a jury panel selected from a fair cross-section of the community. This issue was ruled in *Duren v. Missouri*, 439 U.S. ——, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), which controls the disposition of this case.

Appellant's first point presents the matter contained in his motion to quash the jury panel "insofar as Jackson County's procedure for selection of jury panels allows women an automatic exemption which denies the accused his right to a jury composed of a representative cross-section of society, thus denying appellant his sixth amendment rights." The state counters and says that appellant presented no competent or relevant evidence to support his motion to quash the jury panel, and notes that there was presented to the trial court only a stipulation concerning the composition of the 1976 jury wheel, and a transcript in the case of *State v. John Henry Bass*, No.

CR77–1146 in the circuit court of Jackson County, Missouri. [The *Bass* case was not appealed, but the transcript of the proceedings is filed by reference in several other *Duren* type cases in this court.]

Both the stipulation for 1976, and the *Bass* transcript, show a wide percentage discrepancy between the numbers of male and female persons summoned for jury service. Previous cases before this court treat the statistics existing in 1976 as continuing through 1977. The *Duren* case was handed down January 9, 1979. There are of course no statistics in this case as to the number of women jurors summoned, or who claimed the exemption, for 1978.

In *State v. Hawkins*, 582 S.W.2d 333 (Mo. App.1979) the cases were noted applying the *Duren*, supra, rule. Among them are *State v. Tate*, 582 S.W.2d 329 (Mo.App. 1979), which noted that the automatic exemption of women upon request has in the last few years been spread upon the records of many trial courts, this court and the Supreme Court of Missouri, in a number of cases and was well and generally known. In *State v. Coleman*, 582 S.W.2d 335 (Mo. App.1979), it was held, "These proofs concede, and these precedents decide, that the systematic gender discrimination in Jackson County venires for the year 1976 which prompted reversal in *Duren continued* into the year 1977 * * *." [Latter emphasis supplied.] In the *Hawkins* case, supra, the statistics in other cases for 1977 were judicially known, demanding reversal and remand for new trial.

■ In all of the foregoing cases it is clear that the statistical gender discrimination continued into 1977 because of the method used in venire selection. During 1978, because the method had not been changed, the statistical disproportion of women on juries must have continued. This calls into play a rule of evidence which is applicable here: "Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent

time; and a fact or relation found to exist at different dates may be of such a nature that its continuance during the intervening period may be legally presumed, * * *." 31A C.J.S. Evidence § 124(1), p. 222. See *Martin v. Sloan*, 377 S.W.2d 252, 256, 257 (Mo.1964). The principle is stated in Wigmore on Evidence, 3rd Ed., § 2530, p. 461, and is expounded at § 383, pp. 321, 322, of that work: "It has already been seen (ante, § 190) that the prior or subsequent existence of a quality or condition is evidential of its existence at a given time. This principle is equally applicable in evidencing a habit or cause (sic, course?) of conduct. Its use is most frequent for facts which can at first sight hardly be ranked here in any natural classification,—facts roughly to be described as involving a human status or relation to external affairs; for example, possession, ownership, solvency and the like. * * * The prior or the subsequent existence of such a fact is always evidential to show its existence at a time in issue, upon the general experience that such facts involve a human attitude more or less continuous and permanent. The probability of continuance depends much, of course, on the nature of the specific fact and the circumstances of each case; * * *." No case has been found applying the presumption to a case precisely like this. Closely analogous, however, is *Penn Oil Co. v. Vacuum Oil Co.*, 60 U.S.App.D.C. 96, 48 F.2d 1008 (1931), which involved the unauthorized and undisclosed substitution of one article for sale for another, held to be a ground for injunction. The substitutions were found to exist in July, 1925, and it was contended that they did not justify an injunction in February, 1929. The court said, p. 1011[5, 6], "The evidence having established sales of substitutes during the period of investigation from July 25 to July 30, 1925, indicated a course of conduct which, like certain other facts, once found to exist, are presumed to continue. 1 Wigmore, Ev. 382. The charge of unfair competition being established, it follows that equity will afford relief by injunction to prevent such unfair competition for the future. Several

acts of unfair competition having been shown, we are warranted in concluding that petitioner is willing to continue that course of conduct, unless restrained. (Citing case.)"

The manner of selection of the venire in Jackson County having impermissibly resulted in a disproportionate percentage of women serving on juries during 1976 and 1977 having been shown to have existed, must be presumed to have continued as a course of conduct or practice through 1978, and indeed until the *Duren* case, supra, struck down that practice on January 9, 1979. See § 479.140, RSMo. 1978, which requires that the jury wheel be replaced annually on or before October 1. Aiding this presumption is the case of *State v. Buford*, 582 S.W.2d 298 (Mo.App.1979). There the 1976 stipulation revealed that 21,884 females declined to serve for no apparent reason other than the election to be excused on that basis. It was said, "The stipulation for 1976 also shows the numbers of those females disqualified because of age, prior jury service, disability, and occupation as teachers. In the 1977 jury wheel chosen by the same process, it is likely that approximately the same number of females declined to serve in 1977 solely by reason of the statutory right to decline jury service; there is no basis to suppose otherwise. To assume otherwise would require this court to presume that over one-half of the persons chosen at random were disqualified for reasons other than election not to serve by gender. It would also require an assumption that the process identical to the 1976 process did not operate to provide a jury wheel of approximately the same proportions as that which the Supreme Court declared improper in *Duren*." The same concept of mathematical probabilities applied in the *Buford* case should be here applied, resulting in this holding that the manner of selecting venires during 1978, could only result in juries serving during that period and until *Duren*, supra, not being composed of a fair cross-section of the community.

The matter of appellant's second point as to claimed improper cross-examination about the details of a prior conviction in an attempt to elicit whether a weapon had been used, is not likely to arise on new trial, and need not be considered.

The judgment is reversed and the case is remanded for new trial.

All concur.